**Charles M. PARROT, Plaintiff–Appellant,**

v.

**THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA, Defendant–Appellee.**

**Docket No. 02–7980.**

United States Court of Appeals, Second Circuit.

Argued: May 16, 2003.

Decided: July 31, 2003.

Bruce L. Elstein, Elstein and Elstein, P.C., Bridgeport, CT (David C. Grimes, on the brief), for Plaintiff–Appellant.

Francis H. Morrison III, Day, Berry & Howard LLP, Hartford, CT (Deborah S. Russo, on the brief), for Defendant–Appellee.

Before: McLAUGHLIN, LEVAL, and SOTOMAYOR, Circuit Judges.

MCLAUGHLIN, Circuit Judge.

Plaintiff Charles M. Parrot appeals from a decision granting judgment as a matter of law to defendant The Guardian Life Insurance Company of America ("Guardian") on Parrot's claim for breach of an insurance contract. In the proceedings below, Parrot claimed that: (1) "income rules" that were not attached to his disability insurance policy are void under Conn. Gen.Stat. § 38a–483 (a)(1), which mandates that the "entire contract" be provided to the insured; and (2) the contract term "rate of earnings when you first became disabled," which is used to calculate the maximum amount of additional insurance the policyholder is eligible to purchase, refers to the last month, not the last twelve months, before he became disabled. The United States District Court for the District of Connecticut (Burns, *J.*)

disagreed with Parrot and entered judgment as a matter of law for Guardian on both issues.

We conclude that Connecticut law does not provide sufficient guidance on Parrot's statutory claim. Because the construction of § 38a–483 (a)(1) implicates significant public policy considerations for Connecticut, we certify this question to the Connecticut Supreme Court.[1]

## BACKGROUND

In 1988, Parrot, a family doctor, purchased a professional disability insurance policy ("DI policy") from Guardian. The policy provided monthly benefits if he became partially or totally disabled. It also included a future increase option rider ("FIO rider") allowing Parrot to purchase additional disability insurance, up to a maximum of $6,000 in monthly benefits, upon each anniversary of the policy ("option date"). Eligibility to exercise the FIO was not dependent upon good health. Parrot could exercise it even after he became disabled.

How much additional insurance Parrot could purchase was limited by certain income rules contained in Guardian's Issue and Participation Limits which linked the maximum benefits to the insured's "rate of earnings" when he became disabled. These rules were not attached to the policy, but were available to the insured upon request. The FIO stated:

> The monthly indemnity of the option plan ... may not exceed our published income rules for new insureds. These rules limit the total insurance which we will issue in relation to earned income. We will use the rules that applied on the

---

1. At this time, we do not resolve the second issue on appeal: whether "rate of earnings" should be calculated by the last month or the average of the last twelve months before Parrot's disability.

date of issue of this policy, *unless more liberal rules are then in effect.*

(emphasis added).

In 1995, after Parrot declared partial disability, Guardian paid him periodic benefits under the policy. In 1996, Parrot became totally disabled. As a result, Guardian adjusted Parrot's benefits to account for his change in status.

On the 1995 option date, Parrot exercised his future increase option. In exercising the option, Parrot was required to submit tax returns and other financial information to determine his benefits level, which increased in proportion to his earned income. The policy provides:

> Your *earned income* for purposes of the option plan will be deemed to be your *rate of earnings* when you first became disabled under this policy.

(emphasis added).

Guardian calculated Parrot's additional benefits based on his average earned income during the twelve months prior to his disability. Guardian's income rules, applied to that figure, yielded additional benefits of $1,600 per month.

Dissatisfied with his benefits rate, Parrot filed this diversity action demanding that Guardian raise the additional monthly benefits to the maximum of $6,000 per month. He asserted that: (1) the unappended income rules were invalid under Conn. Gen.Stat. § 38a–483(a)(1); and (2) "rate of earnings" in the policy referred to his earnings in the last month, not to the average of the last twelve months, before he became disabled. At a minimum, he claimed, "rate of earnings" was ambiguous and should be construed in his favor. Following the close of evidence at a jury trial, the district court granted Guardian's Rule 50 motion for judgment as a matter of law on both issues.

Parrot now appeals.

## DISCUSSION

■ We review the district court's grant of a motion for judgment as a matter of law *de novo*. *See, e.g., Patrolmen's Benevolent Ass'n v. City of New York*, 310 F.3d 43, 50–51 (2d Cir.2002).

■ A party is entitled to judgment as a matter of law under Fed.R.Civ.P. 50(a) only when there is no sufficient legal basis for the jury to find in his favor. *Nadel v. Isaksson*, 321 F.3d 266, 271 (2d Cir.2003). The evidence, however, must be viewed in the light most favorable to the nonmoving party. *De Kwiatkowski v. Bear, Stearns & Co.*, 306 F.3d 1293, 1296–97 (2d Cir. 2002).

To determine whether the district court erred in granting judgment as a matter of law to Guardian, we must interpret Conn. Gen.Stat. § 38a–483 (a)(1).

### I. *Issue and Participation Limits*

Conn. Gen.Stat. 38a–483(a)(1) requires that insurance contracts include the following provision:

> "ENTIRE CONTRACT: CHANGES: *This policy, including the endorsements and the attached papers, if any, constitutes the entire contract of insurance.* No change in this policy shall be valid until approved by an executive officer of the insurer and unless such approval be endorsed hereon or attached hereto. No agent has authority to change this policy or to waive any of its provisions."

Conn. Gen.Stat. § 38a–483(a)(1) (emphasis added).

■ Section 38–483(a)(1) appears, at first blush, to invalidate Guardian's unappended income rules, including their limitations on additional benefits. Indeed, the sole case squarely addressing this statutory provision invalidated a limitation in a

rider to a disability insurance contract. See *Sanghavi v. Paul Revere Life Ins. Co.*, 214 Conn. 303, 572 A.2d 307 (1990). The material factual differences between *Sanghavi* and the instant case, however, lead us to question whether the Supreme Court of Connecticut would find *Sanghavi* controlling.

In *Sanghavi*, the rider also provided the insured with an option to purchase additional benefits subject to limitations provided in the insurance company's published income rules. As with Guardian's "proposed income rules," the "then published income limits" document in *Sanghavi* was not appended to the policy. The Connecticut Supreme Court held that under § 38–167 (the predecessor to § 38a–483), the insurance company could not incorporate this extrinsic document by reference. The court was concerned that the unappended document placed the insured at the mercy of the insurer: "the plaintiff's right to increased benefits can be modified, controlled and defined solely by the defendant ... contrary to the purpose of [the statute]." *Id.* at 308, 572 A.2d 307 (citation omitted).

There is reason to believe that the Connecticut Supreme Court would distinguish the instant case from *Sanghavi*.

In *Sanghavi*, the court's primary concern was that the unappended income rules empowered the insurer to reduce the insured's benefits under the original policy. Parrot's policy, in contrast, applies the more generous of the income rules in effect at either the time of the initial purchase of the policy or when the insured exercises his option. Therefore, any changes in Guardian's published income rules could never work to Parrot's disadvantage. Making this distinction, a Pennsylvania district court interpreted a Pennsylvania statute similar to Connecticut's under nearly identical facts to this case

and arrived at a result at odds with *Sanghavi*. *Prousi v. UNUM Life Ins.*, 77 F.Supp.2d 665 (E.D.Pa.1999), *aff'd*, 251 F.3d 154 (3d Cir.2000).

In *Prousi*, the insured challenged the validity of an unappended Issue and Participation table limiting the amount of insurance that he was eligible to purchase. To calculate his benefits, the insurance company used the table in effect at the time the insured applied for an increase. *Id.* at 667. The insured cited *Sanghavi* as authority for invalidating the limits imposed by the table. The court nevertheless enforced the unappended terms based on its finding that the insurer had made no attempt at " 'wrongful concealment.' "

> On the contrary, the *condition* on the option to buy an additional policy appears plainly in the rider and informs Prousi that his ability to buy an additional policy will be limited by the amount of coverage in force and to the same extent that [the insurance company] limits the amount of insurance it is willing to issue a new applicant.... There is no allegation here that the tables themselves are somehow unfair or designed to improperly deny the insured the opportunity to purchase additional coverage.

*Id.* at 670, 671 (emphasis in original).

A court justifiably might conclude that *Prousi*'s reasoning applies with equal force to the instant case. By maintaining income rules apart from Parrot's policy, the insurer did not obscure any ability to diminish his coverage or even to diminish the coverage he could later opt to purchase. Any subsequent changes to the income rules would, if anything, have allowed him to purchase more coverage under the $6,000 cap on the same terms that the insurer was offering to the general public for such insurance at that time. Had Guardian attached the 1988 income

rules to the original policy, it would have enabled Parrot to calculate only the *minimum* additional insurance he was eligible to purchase within the $6,000 limit. Consequently, a court would be well within reason to conclude that *Sanghavi* does not speak to the situation at hand.

It may be, however, that the Connecticut Supreme Court in *Sanghavi* had occasion to confront just one of the problems that § 38a–483 (a)(1) was designed to address. The statute might equally exist to guarantee an insured full disclosure of his rights and responsibilities under the policy, including any income limitations that are necessary to determine his full benefits. Such full disclosure would obviously protect the insured because he has the entire policy to compare against an agent's representations of the coverage. The disclosure may also benefit the insurer by alerting the insured that he should rely only on the policy rather than on any potentially mistaken or misleading statements of the insurer's agent or some promotional materials—statements to which the insurer might otherwise be held. Furtherance of these policies might lead a court to conclude that *Sanghavi* controls the instant case after all.

As a result, this case involves the resolution of an important question of Connecticut insurance law. That question turns on a statute, for the proper construction of which the Connecticut Supreme Court has given us some, but ultimately not enough, guidance.

In the event the Supreme Court does find the unappended income rules void under § 38a–483 (a)(1), a further question arises as to what the proper remedy should be. To permit Parrot to purchase the full $6,000/month maximum after he has already become disabled, when it was always clear that the FIO never contemplated such large benefits, could amount to a windfall. Moreover, assuming a different policyholder's FIO rider were silent as to any such $6,000 monthly maximum, it is not altogether clear what, if any, limit would be placed on the amount of coverage that policyholder could purchase were the unappended income rules voided. Such a consequence, it has been claimed, could be potentially ruinous to insurers. Accordingly, we ask the Supreme Court: in the event that the income rules are void under § 38a–483 (a)(1), what should the remedy be?

### CERTIFICATION

■ Connecticut law allows for the federal certification of questions of state law directly to the Connecticut Supreme Court. *See* Conn. Gen.Stat. § 51–199b(d) (2002). This Court has long recognized that state courts should be accorded the first opportunity to decide significant issues of state law through the certification process. *See, e.g., Great Northern Ins. Co. v. Mt. Vernon Fire Ins. Co.*, 143 F.3d 659, 662 (2d Cir.1998). "Where a question of statutory interpretation implicates the weighing of policy concerns, principles of comity and federalism strongly support certification." *See Sealed v. Sealed,* 332 F.3d 51 (2d Cir.2003).

We believe that the issue presented by this case should be certified to the Connecticut Supreme Court for three reasons.

First, Connecticut appellate precedent provides insufficient guidance on the controlling question of statutory construction at issue on this appeal. When existing authority is inconclusive, we have deemed certification appropriate. *See, e.g., Carney v. Philippone,* 332 F.3d 163 (2d Cir.2003); *New York Univ. v. First Fin. Ins. Co.,* 322 F.3d 750, 757 (2d Cir.2003).

Second, the interpretation of § 38a–483 (a)(1) implicates important public policy

considerations. As a result, Connecticut "has a strong interest in deciding the issue[s] certified rather than having the only precedent on point be that of the federal court, which may be mistaken." *Great Northern Ins. Co.*, 143 F.3d at 662 (quoting *Home Ins. Co. v. Am. Home Prods. Corp.*, 873 F.2d 520, 522 (2d Cir.1989)) (internal quotations omitted). Because insurance is "paradigmatically a state field . . . there is, therefore, greater cause for this court to stay its hand (at least temporarily)." *Allstate Ins. Co. v. Serio*, 261 F.3d 143, 154 (2d Cir.2001) (certifying issue of statutory construction of state automobile insurance law where the applicable statute and case law provided inconclusive guidance).

Finally, the issues presented in this case are likely to recur and, consequently, their resolution will assist the administration of justice in both federal and state courts. *See, e.g., Cweklinsky v. Mobil Chem. Co.*, 297 F.3d 154, 161 (2d Cir.2002).

Accordingly, we respectfully certify the following questions to the Connecticut Supreme Court:

(1) Does Conn. Gen.Stat. § 38a–483(a)(1)'s requirement that the "entire contract" be provided to the insured prohibit an insurance company from incorporating by reference current and future annual benefit rates, where the insurer can neither decrease nor eliminate a fixed benefit of the original policy?

(2) In the event that the unappended income rules are void under § 38a–483(a)(1), what is the proper remedy in this case?

We invite the Connecticut Supreme Court to construe liberally and, if necessary, expand these certified questions to address related or other relevant issues in connection with this appeal. We retain jurisdiction over the case once the Supreme Court has either ruled on the certified questions or has declined certification.

Accordingly, it is hereby ORDERED that the Clerk of this Court transmit to the Connecticut Supreme Court a Certificate, as set forth below, together with a complete set of the briefs, appendix, and record filed by the parties in this Court. The parties are further ORDERED to bear equally such costs and fees, if any, as may be required by the Connecticut Supreme Court.

## CERTIFICATE

The foregoing is hereby certified to the Connecticut Supreme Court pursuant to Second Circuit Local Rule § 0.27 and Conn. Gen.Stat. § 51–199b, as ordered by the United States Court of Appeals for the Second Circuit.