CHARLES M. PARROT *v*. THE GUARDIAN LIFE
INSURANCE COMPANY OF AMERICA
(SC 17062)

Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued September 21, 2004—officially released March 1, 2005

*Bruce L. Elstein,* with whom was *David C. Grimes,* for the appellant (plaintiff).

*Allan B. Taylor,* with whom were *Francis H. Morrison III,* and, on the brief, *Deborah S. Russo,* for the appellee (defendant).

*Opinion*

ZARELLA, J. The dispositive issue in this case, which comes to us upon our acceptance of two certified questions from the United States Court of Appeals for the Second Circuit pursuant to General Statutes § 51-199b (d), is whether the "entire contract" clause of General Statutes § 38a-483 (a) (1)[1] prohibits an insurer from

---

[1] General Statutes § 38a-483 (a) provides in relevant part: "[E]ach individual health insurance policy *delivered or issued for delivery* to any person in this state shall contain the provisions specified in this subsection . . . . Such provisions to be contained in such policy shall be:

"(1) A provision as follows: 'ENTIRE CONTRACT: CHANGES: *This policy, including the endorsements and the attached papers, if any, constitutes the entire contract of insurance.* No change in this policy shall be valid until approved by an executive officer of the insurer and unless such approval

incorporating by reference its underwriting income rules[2] described in a future increase option rider to a disability insurance policy, when the application of those rules can neither decrease nor eliminate a fixed benefit of the original policy. We answer that question in the negative.

The plaintiff, Charles M. Parrot, commenced this breach of contract action in the United States District Court for the District of Connecticut after the defendant, The Guardian Life Insurance Company of America (Guardian), denied his request to obtain the maximum amount of insurance available under a future increase option rider to an existing disability insurance policy. In that proceeding, Parrot contended, inter alia,[3] that the income rules that Guardian had used to calculate the monthly benefit to which he was entitled were void because they were not appended to the rider to his policy as required by § 38a-483 (a) (1). The District Court rendered judgment as a matter of law for Guardian, from which Parrot appealed to the Second Circuit Court of Appeals. That court then certified two questions to us, which we have agreed to answer.[4]

be endorsed hereon or attached hereto. No agent has authority to change this policy or to waive any of its provisions.' . . ." (Emphasis added.)

[2] Income rules, which are also known as issue and participation limits, are established by insurers of disability income protection as an integral part of their underwriting policies. The rules limit the amount of coverage that a policyholder may purchase to a percentage of the policyholder's earned income.

[3] In the proceedings before the District Court, Parrot also claimed that Guardian had misconstrued the contract term "rate of earnings when you first became disabled," which, in conjunction with the income rules, limits the amount of coverage a disabled option holder may purchase. In particular, Parrot argued that such contract term "referred to his earnings in the last month, not to the average of the last twelve months, before he became disabled." *Parrot v. Guardian Life Ins. Co. of America*, 338 F.3d 140, 142 (2d Cir. 2003). That issue has not been certified to this court.

[4] The Second Circuit Court of Appeals certified the following two questions to this court: "(1) Does . . . § 38a-483 (a) (1)'s requirement that the 'entire contract' be provided to the insured prohibit an insurance company from incorporating by reference current and future annual benefit rates, where

The record certified by the Second Circuit Court of Appeals reveals the following relevant facts and procedural history. In 1988, Parrot, a medical doctor, purchased a disability insurance policy from Guardian that provided for the payment of monthly benefits if he should become partially or totally disabled. The policy included a future increase option rider that gave Parrot the right to purchase an additional insurance policy on each anniversary date of his original policy at terms offered to new insureds at that time, regardless of any intervening changes to his health or occupation. The future increase option rider, together with the attached schedule of benefits, stated that the maximum monthly indemnity amount that Parrot could purchase on all option dates combined was $6000. Although this term established a cap on the optional coverage, the precise amount of coverage that Parrot could purchase was limited by Guardian's underwriting income rules, which were referenced in the rider but not appended thereto. Specifically, the rider stated: "The monthly indemnity of the option plan . . . may not exceed our published income rules for new insureds. These rules limit the total insurance which we will issue in relation to earned income.[5] We will use the rules that applied on the date of issue of this policy, unless more liberal rules are then in effect." Parrot's policy, to which the rider was attached, also contained the "entire contract" provision mandated by § 38a-483 (a) (1). The relevant provision in Parrot's policy provides: "This policy, with its riders and attached papers, if any, is the entire contract of

---

the insurer can neither decrease nor eliminate a fixed benefit of the original policy?

"(2) In the event that the unappended income rules are void under § 38a-483 (a) (1), what is the proper remedy in this case?" *Parrot* v. *Guardian Life Ins. Co. of America*, 338 F.3d 140, 145 (2d Cir. 2003).

[5] A separate policy provision defined the term "earned income" for purposes of the option plan as the insured's "rate of earnings when [the insured] first became disabled under this policy."

insurance. No change in this policy will be valid unless it has been endorsed on or attached to this policy in writing by the president, a vice president, or the secretary of Guardian."

In 1995, Parrot became partially disabled and Guardian began paying monthly benefits to him. One year later, Parrot became totally disabled and Guardian adjusted his monthly benefit upward to $3000, the full monthly indemnity allowed under his original policy. On the 1995 anniversary date, Parrot exercised his future increase option and submitted his tax returns and other financial records to Guardian for use in calculating the additional coverage that he was eligible to obtain under the terms of the future increase option rider. On the basis of those records, Guardian calculated Parrot's average monthly rate of earnings during the twelve months preceding his disability. Guardian then applied its most liberal income rules to that earnings figure and determined that Parrot was qualified to receive an additional benefit of $1600 per month.[6] On December 19, 1995, Guardian issued to Parrot a second insurance policy specifying an indemnity in that amount.

Parrot's dissatisfaction with Guardian's calculation prompted him to file a diversity action against Guardian in federal District Court. Parrot alleged that Guardian had breached the terms of its insurance contract with him and demanded that the company raise his monthly benefits under the 1995 contract to $6000, the maximum set forth in the schedule of benefits, to which the future increase option rider refers. According to Parrot, such a remedy was appropriate because the income rules were not appended to the original policy, and, consequently, were invalid under § 38a-483 (a) (1). Parrot

---

[6] Guardian used its 1995 income rules to calculate Parrot's eligibility for additional benefits because they were more liberal than the rules in effect in 1988, the year in which Guardian had issued the original policy to Parrot.

also contended that Guardian had misinterpreted the contract term "rate of earnings when you first became disabled," which drives the incremental amount of insurance that Guardian will underwrite to its disabled policyholders in accordance with its published income rules. See footnote 3 of this opinion. Following the close of evidence after a jury trial, the District Court granted Guardian's motion for judgment as a matter of law on both issues and rendered judgment thereon in favor of Guardian.

Parrot appealed from that judgment to the Second Circuit Court of Appeals. Following oral argument by the parties, the Court of Appeals determined that Parrot's claim implicates "an important question of Connecticut insurance law" that involves the application of § 38a-483 (a) (1). *Parrot* v. *Guardian Life Ins. Co. of America*, 338 F.3d 140, 144 (2d Cir. 2003). The Court of Appeals noted that Connecticut appellate precedent addressing that statutory provision is limited to a single case, namely, *Sanghavi* v. *Paul Revere Life Ins. Co.*, 214 Conn. 303, 572 A.2d 307 (1990); see *Parrot* v. *Guardian Life Ins. Co. of America*, supra, 142–43; in which this court invalidated, under a predecessor statute to § 38a-483, an income limitation in an option rider to a disability policy. *Sanghavi* v. *Paul Revere Life Ins. Co.*, supra, 307–308. The Court of Appeals observed, however, that there are "material factual differences" between the policy at issue in *Sanghavi* and the policy at issue in the present case, and that the principal concern underlying our decision in *Sanghavi* apparently does not exist in the present case. *Parrot* v. *Guardian Life Ins. Co. of America*, supra, 143. In its certification order, the Court of Appeals explained: "In *Sanghavi*, the [Connecticut Supreme Court's] primary concern was that the unappended income rules empowered the insurer to reduce the insured's benefits under the original policy. Parrot's policy, in contrast, applies the more

generous of the income rules in effect at either the time of the initial purchase of the policy or when the insured exercises his option. Therefore, any changes in Guardian's published income rules could never work to Parrot's disadvantage." Id. In light of that distinction, the Court of Appeals questioned whether this court would find *Sanghavi* controlling under the circumstances of this case. See id. Accordingly, the Court of Appeals certified the following two questions to us, which we accepted: "(1) Does . . . § 38a-483 (a) (1)'s requirement that the 'entire contract' be provided to the insured prohibit an insurance company from incorporating by reference current and future annual benefit rates, where the insurer can neither decrease nor eliminate a fixed benefit of the original policy?

"(2) In the event that the unappended income rules are void under § 38a-483 (a) (1), what is the proper remedy in this case?" Id., 145.

Resolution of the first certified question involves an issue of statutory interpretation over which we exercise plenary review. See, e.g., *Perodeau* v. *Hartford*, 259 Conn. 729, 735, 792 A.2d 752 (2002). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature." (Internal quotation marks omitted.) *Hartford Courant Co.* v. *Freedom of Information Commission*, 261 Conn. 86, 99, 801 A.2d 759 (2002). In other words, "we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply." (Internal quotation marks omitted.) *Jones* v. *Kramer*, 267 Conn. 336, 343, 838 A.2d 170 (2004). In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider "the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and

does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered."

Connecticut has enacted a statute that requires insurers to incorporate certain standard provisions in individual health insurance policies, including those providing disability income protection.[7] See generally General Statutes § 38a-483 (a). Subdivision (1) of § 38a-483 (a) requires the inclusion of the following clause: "ENTIRE CONTRACT: CHANGES: *This policy, including the endorsements and the attached papers, if any, constitutes the entire contract of insurance.* No change in this policy shall be valid until approved by an executive officer of the insurer and unless such approval be endorsed hereon or attached hereto. No agent has authority to change this policy or to waive any of its provisions." (Emphasis added; internal quotation marks omitted.)

Neither party disputes the meaning of the "entire contract" clause embodied in § 38a-483 (a) (1). It requires an insurer that issues individual health insurance policies to insert in each such policy a clause stating that all of the policy terms and conditions are included in the issued contract of insurance. This statutory provision benefits a policyholder in two ways. First, it ensures that the policyholder is apprised of his or her rights and obligations under an issued policy. Second, it promotes certainty in the contract by requiring an insurer to establish the terms and conditions of the policy on the date of its issuance. See *Sanghavi* v. *Paul Revere Life Ins. Co.*, supra, 214 Conn. 308.

The arguments advanced by Parrot and Guardian center on the applicability of the "entire contract" clause of § 38a-483 (a) (1) to the facts of the present case in

---

[7] General Statutes § 38a-469 (5) includes "disability income protection coverage" in the definition of health insurance policy.

light of our interpretation of the predecessor to that statute in *Sanghavi*. See id., 307–308 (interpreting General Statutes [Rev. to 1989] § 38-167). Specifically, Parrot contends that, under the reasoning of *Sanghavi*, the income condition described in the future increase option rider must be deemed invalid because the income rules to which the rider refers were not appended to the 1988 policy that included the rider. Guardian responds that *Sanghavi* is not controlling in this case because the policy at issue in *Sanghavi* and the policy at issue in the present case are factually distinguishable. We agree with Guardian.

The language of the statute makes clear that the "entire contract" clause was designed to protect policyholders once a policy is "*delivered or issued for delivery* . . . ." (Emphasis added.) General Statutes § 38a-483 (a). That prerequisite leads us to conclude that a crucial distinction between *Sanghavi* and the present case is that, in the former case, the income rules affected the benefits payable under an existing policy that had been issued and delivered to the policyholder. The rider at issue in the present case, by contrast, provided that Guardian would apply its income rules to underwrite a wholly separate policy in the future. Because the income rules referenced in Parrot's rider did not affect the benefits payable under an existing policy that had been issued and delivered to Parrot, § 38a-483 (a) (1) does not invalidate the income condition described therein.

*Sanghavi* involved only one insurance policy. See *Sanghavi* v. *Paul Revere Life Ins. Co.*, supra, 214 Conn. 304. An accompanying rider allowed the plaintiff, Jagdish M. Sanghavi, to increase the benefits payable under that policy by $100 per month, provided that his earned income was sufficient to qualify for an increase in coverage on the option dates according to the company's

"then published income limits."[8] Id., 305. In that case, the unappended income rules placed a condition on the benefits payable under an existing policy that had been issued and delivered to Sanghavi within the meaning of General Statutes (Rev. to 1989) § 38-167 (a),[9] the predecessor to § 38a-483 (a). Adopting the reasoning of the trial court, we explained in *Sanghavi* that, because the insurer did not append the income limits to Sanghavi's policy, it "failed to present [Sanghavi] with the entire contract or to apprise him of all his rights under the policy." (Internal quotation marks omitted.) Id., 308. Furthermore, Sanghavi's option, unlike Parrot's, did not require the insurer to use its income

[8] The rider in Sanghavi's policy provided in relevant part: "INCREASE IN MONTHLY INDEMNITY OPTION. The Company agrees, subject to the terms and conditions hereinafter set forth and while this Benefit and the policy to which it is attached are in force, *to increase, without evidence of physical insurability, the Monthly Indemnity for Total Disability specified in the Policy Schedule of the policy* in an amount equal to the Unit of Monthly Indemnity Increase or portion thereof set forth for this Benefit in the Table of Supplementary Benefits of the Policy Schedule upon each of the Anniversary Option Dates . . . provided . . . (2) such Monthly Indemnity Increase together with similar total disability indemnity benefits under *the policy* and all other valid disability income coverage . . . provided by this or any other insurer . . . does not exceed the maximum disability income coverage being offered by the Company to new applicants of the Insured's classification of risk on the Anniversary Option Date according to the Company's then published underwriting and participation limits; and (3) *the Insured's monthly earned income is sufficient to qualify for an increase in Monthly Indemnity on the Anniversary Option Date according to the Company's then published income limits* . . . ." (Emphasis added; internal quotation marks omitted.) *Sanghavi* v. *Paul Revere Life Ins. Co.*, supra, 214 Conn. 310 n.3.

[9] General Statutes (Rev. to 1989) § 38-167 (a) provided in relevant part: "[E]ach [accident or health] policy delivered or issued for delivery to any person in this state shall contain the provisions specified in this subsection . . . . Such provisions to be contained in such policy shall be (1) a provision as follows: 'ENTIRE CONTRACT: CHANGES: *This policy, including the endorsements and the attached papers, if any, constitutes the entire contract of insurance.* No change in this policy shall be valid until approved by an executive officer of the insurer and unless such approval be endorsed hereon or attached hereto. No agent has authority to change this policy or to waive any of its provisions.'" (Emphasis added.)

rules in effect on the policy issuance date, even if they were more generous than the rules in effect on the date that the option was exercised. Consequently, the court in *Sanghavi* was troubled by the fact that the insurer had unfettered discretion to modify its underwriting income limits in the future in order to reduce the benefits available to Sanghavi under his policy. See id. That feature not only contributed to Sanghavi's inability to determine the benefits to which he was entitled under the policy, but also created uncertainty in the contract by failing to establish the terms and conditions of the policy as of the issuance date. See id.

When Parrot purchased his 1988 policy, he obtained two separate insurance products with features that are markedly different from the single policy issued to Sanghavi. Specifically, Parrot purchased the underlying policy that would pay him a maximum benefit of $3000 per month if he became totally disabled. Parrot also purchased an option plan that afforded him the right to procure a *separate, additional* policy in the future on terms at least as favorable as those then offered to new insureds, without regard to any change in Parrot's health or occupation.[10] Indeed, the option plan makes

---

[10] The future increase option rider provides in relevant part: "This rider gives you the right to buy more disability income insurance in future years in spite of any change in your health or occupation. We call the added insurance an option plan.

"*The option plan will be on a policy form which is most like this policy then in use in the place where you live.*

"The total increase option is shown in the schedule page. This is the maximum amount of monthly indemnity which you may buy under this rider on all option dates combined. Your option date each year is the policy anniversary.

\* \* \*

"You do not have to give evidence of good health. But you must give us details of your income, employment and other insurance in force.

\* \* \*

"*The monthly indemnity of the option plan . . . may not exceed our published income rules for new insureds. These rules limit the total insurance which we will issue in relation to earned income. We will use the rules that applied on the date of issue of this policy, unless more liberal rules are then in effect.*

clear that all of the terms of the new policy would be defined in the future, reserving to Guardian the right to modify its corporate underwriting policies in response to competitive forces in the marketplace. Although the option plan stated that his eligibility to purchase an additional policy would be subject to the limitations imposed by Guardian's income rules, Parrot's case differs from *Sanghavi* because the income rules did not affect the benefits payable under Parrot's original policy, which had been fully underwritten and delivered to Parrot. Rather, the income rules to which the future increase option rider refers merely served to clarify the standard for underwriting a wholly separate policy that may or may not be issued in the future. Thus, Guardian's application of its income rules under the circumstances of this case simply does not fall within the purview of § 38a-483 (a) (1) in view of our interpretation of its predecessor in *Sanghavi*.[11]

---

\* \* \*

"Premiums of the option plan will be at our rates for your age and class of risk on the option date. . . ." (Emphasis added.)

[11] Parrot also contends that his policy with Guardian constitutes a contract of adhesion, and, therefore, the "entire contract" clause of the policy should have been construed against Guardian. See *Rumbin* v. *Utica Mutual Ins. Co.*, 254 Conn. 259, 264 n.6, 757 A.2d 526 (2000) ("[s]tandardized contracts of insurance continue to be prime examples of contracts of adhesion, whose most salient feature is that they are not subject to the normal bargaining process of ordinary contracts" [internal quotation marks omitted]). Parrot's argument implicates the doctrine of contra proferentem, under which ambiguous provisions in a contract of adhesion are interpreted against the drafter. See *Israel* v. *State Farm Mutual Automobile Ins. Co.*, 259 Conn. 503, 509, 789 A.2d 974 (2002) (doctrine of contra proferentem "is more rigorously applied in the context of insurance contracts rather than in other contracts"). "The doctrine . . . applies, however, only if we conclude that the language of the insurance policy is ambiguous." Id. There is nothing ambiguous about the "entire contract" clause of Parrot's policy, which provides in relevant part: "This policy, with its riders and attached papers, if any, is the entire contract of insurance." Moreover, Parrot's argument is inconsistent with his statutory construction claim, in which he contends that the language of § 38a-483 (a) (1) is clear and unambiguous.

Parrot argues, nevertheless, that the harm that § 38a-483 (a) (1) seeks to prevent is the insured's inability to determine the benefits available to him or her under an insurance contract. In order to prevent that harm, Parrot claims that an insurer must not only physically attach the income rules in effect on the date of the rider, but also must provide the policyholder with periodic updates whenever the rules change. Otherwise, Parrot argues, a policyholder will not be able to determine when his or her income might qualify for increased coverage under the terms of the rider. Parrot therefore posits that, if Guardian were allowed to use its unappended income rules in order to reduce the $6000 maximum monthly indemnity authorized by the future increase option rider and schedule of benefits, such a result would contravene the legislative intent of the statute. We are not persuaded.

Although we agree that one of the purposes of the statute is to apprise the policyholder of his rights under an insurance contract, we conclude that goal was attained in the present case for two principal reasons. First, the rider in Parrot's policy, unlike Sanghavi's policy, provided that Guardian would use the income rules that applied in 1988 unless more liberal rules were in effect on the option date. If Parrot's income rose, he knew that the amount of incremental coverage that he could obtain would equal, at a minimum, the benefits calculated in accordance with the 1988 income rules. This feature in Parrot's rider not only promoted certainty in the contract by establishing a floor on the income condition as of the policy issuance date, but also fostered his knowledge of the benefits provided in accordance with the rider.

Second, there is nothing in the language of the statute to support Parrot's assertion that the legislature intended to require an insurer to attach physically its underwriting income rules to an increase option rider.

Nor does *Sanghavi* strictly impose such a requirement even when an insurer's application of its income rules affects the benefits payable under an existing policy. In *Sanghavi*, we noted that the rules were neither appended to Sanghavi's policy nor made available to him; *Sanghavi* v. *Paul Revere Life Ins. Co.*, supra, 214 Conn. 308; suggesting that the physical attachment of documents is not the only means of illuminating the terms embodied in an insurance contract. In the present case, the future increase option rider fully apprised Parrot of the terms and conditions of his option plan, including the income provision at issue in this appeal. See footnote 10 of this opinion. Furthermore, Guardian represented to this court that it routinely makes the income rules available to policyholders upon their request. There was nothing to prevent Parrot from asking Guardian to send him those rules, as he did in 1995 when he exercised his option. In light of these factors, we conclude that Guardian's failure to append its income rules to Parrot's policy did not offend the legislative goals of the statute.[12]

Finally, we note that our decision today is in accord with case law from other jurisdictions that have con-

[12] At oral argument before this court, Parrot argued that Guardian's application of its income rules also violated the parol evidence rule because the "entire contract" provision mandated by § 38a-483 (a) (1) is a contract merger clause. Parrot contends that this court's jurisprudence makes clear that the terms of a written contract containing a merger clause may not be varied or contradicted by extrinsic evidence. See, e.g., *Tallmadge Bros., Inc.* v. *Iroquois Gas Transmission System, L.P.*, 252 Conn. 479, 503, 746 A.2d 1277 (2000). Building on that premise, Parrot contends that the income rules added a new term to the option plan, thereby violating the parol evidence rule. Parrot's argument lacks merit. The rider included a term that obligated Guardian to apply the income rules in effect on either the original policy issuance date or the option date, whichever were more liberal. When Parrot exercised his option in 1995, Guardian applied its income rules strictly in conformance with that stated term. Specifically, Guardian used its 1995 income rules to evaluate Parrot's eligibility to obtain additional insurance because they were more liberal than the rules in effect in 1988. We fail to see how the parol evidence rule is implicated under these facts because the income rules did not vary or contradict the terms of the rider in any way.

strued state statutes similar to § 38a-483 (a) (1). Of particular significance is *Equitable Life Assurance Society of the United States* v. *Rocanova*, 189 App. Div. 2d 660, 592 N.Y.S.2d 360 (1993) (*Equitable Life*), which involved an option rider similar to one in Parrot's policy. See id., 663. The policyholder in *Equitable Life* argued that the insurer's reference to income limits in an increase option rider violated New York insurance law by incorporating underwriting standards that were not contained in the underlying policy. Id., 662–63. Although New York's statutory "entire contract" provision[13] is more restrictive than that enacted by the Connecticut legislature, the Appellate Division of the Supreme Court of New York nevertheless concluded: "The option in question . . . provides for *additional* insurance and the issuance of a new policy to provide the additional coverage. The underwriting limits referred to in the option rider . . . are not part of the existing policy but merely refer to a standard for determining eligibility for separate, additional coverage. Therefore, the underwriting standards have no effect on the insurance presently in force and do not come within the purview of the statute." (Emphasis in original.) Id., 663.

The United States District Court for the Eastern District of Pennsylvania reached the same result under analogous facts in *Prousi* v. *UNUM Life Ins. Co. of America*, 77 F. Sup. 2d 665 (E.D. Pa. 1999), aff'd, 251 F.3d 154 (3d Cir. 2000). Although the court in *Prousi* distinguished *Sanghavi* on the ground that Pennsylva-

---

[13] Section 3204 of New York Insurance Law provides in relevant part: "(a) (1) Every policy of life, accident or health insurance, or contract of annuity, delivered or issued for delivery in this state, shall contain the entire contract between the parties, and nothing shall be incorporated therein by reference to any writing, unless a copy thereof is endorsed upon or attached to the policy or contract when issued. . . ." N.Y. Ins. Law § 3204 (a) (1) (McKinney 2000).

nia's statutory scheme differed from that enacted by the Connecticut legislature; id., 671–72 n.7; we find the two schemes to be strikingly similar. In fact, the Pennsylvania "entire contract" statute[14] mirrors the language of § 38a-483 (a) (1). The court in *Prousi*, adopting reasoning similar to that embraced in this opinion, held that the insurer's use of its income rules to determine "whether or not to underwrite an *additional* policy, [did] not offend the legislative purpose or plain language of the [statute]." (Emphasis added.) Id., 673.

For the foregoing reasons, we conclude that the answer to the first certified question is: No. The "entire contract" provision of § 38a-483 (a) (1) does not prohibit an insurer from incorporating by reference its underwriting income rules in an increase option rider to a disability insurance policy, when the application of those rules can neither decrease nor eliminate a fixed benefit of the original policy. Consequently, we need not reach the second certified question.

No costs shall be taxed in this court to either party.

In this opinion the other justices concurred.

---

[14] The Pennsylvania statute requires insurers to place the following provision into insurance contracts that are delivered or issued for delivery in that state: "Entire Contract; Changes: *This policy, including the endorsements and the attached papers, if any, constitutes the entire contract of insurance.* No change in this policy shall be valid until approved by an executive officer of the insurer and unless such approval be endorsed hereon or attached hereto. No agent has authority to change this policy or to waive any of its provisions." (Emphasis added.) Pa. Stat. Ann. tit. 40, § 753 (A) (1) (West 1999); see General Statutes § 38a-483 (a) (1) (containing identical language).