D'ANGELO DEVELOPMENT AND CONSTRUCTION COMPANY *v.* STEVEN P. CORDOVANO ET AL.
(SC 17358)

Borden, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued November 30, 2005—officially released May 16, 2006

*Brendan J. O'Rourke*, with whom, on the brief, were *Jeffrey M. McCormick* and *Marianne F. Murray*, for the appellants (defendants).

*Richard E. Castiglioni*, with whom, on the brief, was *Jonathan J. Kelson*, for the appellee (plaintiff).

*Opinion*

ZARELLA, J. The sole issue in this appeal is whether a new home construction contract that fails to comply with the registration, disclosure and contract language provisions of the New Home Construction Contractors Act, General Statutes § 20-417a et seq.,[1] is unenforceable. The defendants, Steven P. Cordovano and Sarah M. Cordovano, appeal from the judgment of the trial court declaring such a contract to be enforceable and declining to invalidate a mechanic's lien placed on their property by the plaintiff, D'Angelo Development and Construction Company. We affirm the judgment of the trial court.

The following facts are undisputed. In the summer of 2000, the defendants offered to purchase a parcel of land located at 134 Highland Avenue in Norwalk from Leonard D'Angelo, Jr., the plaintiff's president and sole employee. D'Angelo had planned to build a home on

---

[1] Throughout this opinion, we refer to the New Home Construction Contractors Act by its full name or as the "act."

speculation at 134 Highland Avenue but agreed to sell the land to the defendants on the condition that they retain the plaintiff to build a home for them on that parcel. On October 30, 2000, the parties closed on the sale of 134 Highland Avenue and signed an agreement calling for the plaintiff to build a home for the defendants at that location.

The plaintiff had been licensed by the state as a home improvement contractor since 1994. See Home Improvement Act, General Statutes § 20-418 et seq. Before October 30, 2000, D'Angelo was unaware of the New Home Construction Contractors Act and its registration requirement for new home construction contractors. See General Statutes § 20-417d (d) ("[n]o person shall . . . (5) engage in the business of a new home construction contractor or hold himself or herself out as a new home construction contractor without having a current certificate of registration"). Upon learning of the act on October 30, 2000,[2] the plaintiff sought a certificate of registration as a new home construction contractor. The plaintiff obtained the certificate on November 2, 2000, three days after signing the contract with the defendants. The plaintiff began construction of the new home at 134 Highland Avenue only after having received the certificate of registration.

In July, 2002, following completion of construction and the defendants' failure to pay the total amount due under the agreement, the plaintiff filed a mechanic's lien against the property in the amount of $86,699.26.[3] The plaintiff then commenced an action against the defendants, asserting claims of breach of contract and

---

[2] D'Angelo learned of the act when he sought a building permit from the city of Norwalk on October 30, 2000. The building inspector informed D'Angelo about the necessity of obtaining a certificate of registration under the act.

[3] The plaintiff contemporaneously filed a second lien against 134 Highland Avenue in the amount of $72,606.59. That lien is not a subject of this appeal.

quantum meruit, and seeking foreclosure of the mechanic's lien.

The defendants moved to substitute a bond for the lien. They then filed an application with the court to declare the lien invalid. In support of their application, the defendants argued that the plaintiff had failed to comply with the registration,[4] disclosure[5] and contract language[6] provisions of the act, and that its noncompliance rendered the contract between the parties unen-

[4] In addition to alleging that the plaintiff failed to comply with the registration requirement of § 20-417d (d) (5), the defendants also alleged that the plaintiff had failed to provide the defendants with a copy of its new home construction contractor's certificate of registration prior to entering into the contract, in noncompliance with § 20-417d (a) (1).

[5] General Statutes § 20-417d (a) (1) requires, inter alia, a new home construction contractor, "prior to entering into a contract with a consumer for new home construction, [to] provide to the consumer . . . written notice that (A) discloses that the certificate of registration does not represent in any manner that such contractor's registration constitutes an endorsement of the quality of such person's work or of such contractor's competency by the commissioner, (B) advises the consumer to contact the Department of Consumer Protection to determine (i) if such contractor is registered in this state as a new home construction contractor, (ii) if any complaints have been filed against such contractor, and (iii) the disposition of any such complaints, and (C) advises the consumer to request from such contractor a list of consumers of the last twelve new homes constructed to completion by the contractor during the previous twenty-four months, or if the contractor has not constructed at least twelve new homes to completion during the previous twenty-four months, then a list of all consumers for whom the contractor has constructed a new home to completion during the previous twenty-four months, and to contact several individuals on the list to discuss the quality of such contractor's new home construction work . . . ."

[6] General Statutes § 20-417d (b) requires a new home construction contractor to "include in every contract with a consumer a provision advising the consumer that the consumer may be contacted by such contractor's prospective consumers concerning the quality and timeliness of such contractor's new home construction work, unless the consumer advises such contractor, in writing, at the time the contract is executed, that the consumer prefers not to be contacted."

Subsection (c) of § 20-417d contains boilerplate language that a new home construction contractor may use to satisfy the disclosure requirements of § 20-417d (a). See footnote 5 of this opinion.

forceable and the lien invalid.[7] Following a hearing, the trial court rendered judgment denying the defendants' application. The trial court concluded that "a violation of the [act] does not relieve a party from a contractual obligation" and that "the lien at issue [was] not invalid as a matter of law." The defendants appealed to the Appellate Court from the judgment of the trial court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

On appeal, the defendants renew their claim that the plaintiff's failure to comply with the act renders the contract unenforceable and the lien invalid. The defendants premise their claim on *Wilson Building & Design Associates, Inc.* v. *Vanderkerckhove,* Superior Court, judicial district of Middlesex, Docket No. CV-01-0096157 S (January 25, 2002) (*Wilson Building*), in which the court held that a new home construction contract entered into by the parties was unenforceable due to the contractor's noncompliance with the act.[8] The plaintiff

[7] The defendant stipulated, however, that "there is or was probable cause for [a] [c]ourt to find . . . that the certificate of mechanic's lien was timely filed, under the applicable . . . statute, and that the amount is valid and not contested . . . ." The only contested issue is the strength of the defendants' statutory defense premised on the plaintiff's noncompliance with the act.

[8] The issue of whether a new home construction contract is unenforceable due to a contractor's failure to comply with the act has generated disagreement within the Superior Court. At least two Superior Court decisions have echoed the court's conclusion in *Wilson Building* that such a contract is unenforceable. See *Westminster Associates* v. *Head,* Superior Court, judicial district of New Haven, Docket No. CV-01-0454381 (February 26, 2004) (finding that contractor's noncompliance with act renders construction contract unenforceable and operates as defense against contractor's attempt to foreclose mechanic's lien); *Hopko* v. *St. Peter,* Superior Court, judicial district of Middlesex, Docket No. CV-02-0100039-S (November 17, 2003) (concluding that contract between contractor and consumers was unenforceable because contractor had not complied with act).

Another line of Superior Court decisions, however, has found such contracts to be enforceable. See *Pulte Home Corp. of New England* v. *Appleton,* Superior Court, judicial district of New London, Docket No. 557401 (July 1, 2002) (32 Conn. L. Rptr. 452) (concluding that contract entered into in noncompliance with act is not unenforceable on basis of public policy

contends, conversely, that the statutory text and legislative intent behind the act preclude a finding that such contracts are unenforceable. We agree with the plaintiff.

We begin by noting that, "the general rule, upheld by the great weight of authority, [is] that no court will lend its assistance in any way toward carrying out the terms of a contract, the inherent purpose of which is to violate the law. In case any action is brought in which it is necessary to prove the illegal contract in order to maintain the action, courts will not enforce it, nor will they enforce any alleged right directly springing from such contract . . . ." *Vaszauskas* v. *Vaszauskas*, 115 Conn. 418, 423, 161 A. 856 (1932); accord *Robertson* v. *Stonington*, 253 Conn. 255, 260, 750 A.2d 460 (2000).

In the present case, there is no evidence in the record to support the conclusion that the purpose of the contract was illegal. Moreover, the defendants make no allegation to that effect. Rather, it is undisputed that the plaintiff was unaware of the statutory requirements relating to new home construction contractors and, upon learning of the act on October 30, 2000, the day that the agreement was signed, it immediately sought and obtained the required certificate of registration. Furthermore, the plaintiff did not commence construction until after it had received the certificate of registration. We thus conclude that the purpose of the contract was not to violate the law but to effectuate an otherwise legal transaction.

considerations); *Jencik* v. *American Custom Homes, LLC*, Superior Court, judicial district of New London, Docket No. 120889 (September 24, 2001) (enforcing contract when contractor was in "technical violation of the [act] at most" and consumer suffered no damages as result of contractor's noncompliance).

Neither this court nor the Appellate Court previously has addressed this issue. Cf. *Nussbaum* v. *Kimberly Timbers, Ltd.*, 271 Conn. 65, 75, 856 A.2d 364 (2004) (determining that, in presence of valid arbitration clause, enforceability of contract being challenged on basis of contractor's noncompliance with act "must be decided initially by the arbitrator").

We next examine the defendants' claim that the failure of the plaintiff to comply with the act renders the contract unenforceable. Because this claim raises a question of statutory interpretation, our review is plenary. See, e.g., *Parrot* v. *Guardian Life Ins. Co. of America*, 273 Conn. 12, 18, 866 A.2d 1273 (2005). When interpreting a statute, "[o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature." (Internal quotation marks omitted.) *Perodeau* v. *Hartford*, 259 Conn. 729, 735, 792 A.2d 752 (2002). "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." General Statutes § 1-2z.

We first consult the text of the act. The New Home Construction Contractors Act, which took effect on October 1, 1999, regulates the activities of new home construction contractors.[9] The act requires a contractor to obtain a certificate of registration from the commissioner of consumer protection (commissioner) before he or she may "engage in the business of new home construction or hold himself or herself out as a new home construction contractor . . . ." General Statutes § 20-417b (a). The act also specifies the circumstances

---

[9] The act defines a " '[n]ew home construction contractor' " as "any person who contracts with a consumer to construct or sell a new home or any portion of a new home prior to occupancy . . . ." General Statutes § 20-417a (5).

The act defines a " '[c]onsumer' " as "the buyer or prospective buyer, or the buyer's or prospective buyer's heirs or designated representatives, of any new home or the owner of property on which a new home is being or will be constructed regardless of whether such owner obtains a building permit as the owner of the premises affected pursuant to section 29-263 . . . ." General Statutes § 20-417a (8).

under which the commissioner may revoke, suspend or refuse to issue or renew a certificate of registration. See General Statutes § 20-417c. Other provisions of the act affirmatively regulate the conduct of new home construction contractors,[10] prohibit new home construction contractors from engaging in certain activities[11] and set forth various requirements as to the format and content of new home construction contracts.[12]

The act further provides three distinct penalties for a violation of its provisions. First, the act empowers the commissioner to impose a civil penalty on, among others, "any person who engages in or practices the work for which a certificate of registration is required by [the act] . . . without having first obtained such a certificate of registration" or any person who "violates any of the provisions of [the act] . . . ." General Statutes § 20-417f. Second, the act provides that "any person who violates any provision of subsection (d) of section 20-417d shall be guilty of a class A misdemeanor." Gen-

---

[10] For example, the act requires a new home construction contractor to provide the consumer with a copy of his or her certificate of registration and other written advice and disclosures before entering into a contract with that consumer. See footnote 5 of this opinion. The act also requires a new home construction contractor to "state in any advertisement, including any advertisement in a telephone directory, the fact that such contractor is registered, and . . . include such contractor's registration number in any such advertisement." General Statutes § 20-417d (a) (2) and (3).

[11] See generally General Statutes § 20-417d (d). Of these prohibitions, the most relevant to the present case is that found in § 20-417d (d) (5), which prohibits a new home construction contractor from "engag[ing] in the business of a new home construction contractor or hold[ing] himself or herself out as a new home construction contractor without having a current certificate of registration . . . ."

[12] General Statutes § 20-417d (b) requires that such contracts contain "a provision advising the consumer that the consumer may be contacted by such contractor's prospective consumers concerning the quality and timeliness of such contractor's new home construction work, unless the consumer advises such contractor, in writing, at the time the contract is executed, that the consumer prefers not to be contacted." Section 20-417d (c) sets forth the form that the written advice and disclosures required by § 20-417d (a) must take.

eral Statutes § 20-417e. Finally, the act provides that a violation of any of its provisions "shall be deemed an unfair or deceptive trade practice under subsection (a) of section 42-110b";[13] General Statutes § 20-417g; thereby exposing the violator to a private lawsuit under the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.[14]

Significantly, the act contains no provision addressing the *enforceability* of contracts that fail to comply with the statutory requirements. Furthermore, there is nothing in the act to suggest that its enumeration of penalties excludes all other remedies. We therefore conclude that the text of the act is ambiguous with regard to the enforceability of noncompliant contracts and turn for additional guidance to other closely related statutes regulating the home construction industry. See General Statutes § 1-2z (meaning of statutory provision is determined by examining text of statute itself and its relationship to other statutes).

The Home Improvement Act was enacted in 1979; see Public Acts 1979, No. 79-606; twenty years prior to the New Home Construction Contractors Act, to provide consumers with protection from unscrupulous home improvement contractors.[15] See *Wright Bros.*

---

[13] General Statutes § 42-110b (a) provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

[14] General Statutes § 42-110g (a) provides in relevant part: "Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action . . . to recover actual damages. Proof of public interest or public injury shall not be required in any action brought under this section. . . ."

[15] The Home Improvement Act defines the term " '[h]ome improvement' " as including, but not limited to, "the repair, replacement, remodeling, alteration, conversion, modernization, improvement, rehabilitation or sandblasting of, or addition to any land or building or that portion thereof which is used or designed to be used as a private residence, dwelling place or residential rental property, or the construction, replacement, installation or improvement of driveways, swimming pools, porches, garages, roofs, siding,

*Builders, Inc.* v. *Dowling,* 247 Conn. 218, 231, 720 A.2d 235 (1998) (underlying purpose of Home Improvement Act is to provide "public with a form of consumer protection against unscrupulous home improvement contractors"). Unlike the New Home Construction Contractors Act, however, the Home Improvement Act contains a provision explicitly invalidating and declaring unenforceable contracts entered into by an unregistered contractor.[16] See General Statutes § 20-429 (a) (8). It is a well established rule of statutory interpretation that, when a statute concerning one subject contains a particular provision, "the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed." (Internal quotation marks omitted.) *M. DeMatteo Construction Co.* v. *New London,* 236 Conn. 710, 717, 674 A.2d 845 (1996). In the present case, the omission of any provision regarding the enforceability of noncompliant contracts from the New Home Construction Contractors Act suggests that the legislature did not intend for noncompliant new home construction contracts to be deemed invalid or unenforceable.

We nevertheless conclude that the statutory scheme remains unclear. We therefore turn to an examination of the legislative genealogy of the New Home Construction Contractors Act. The act originated in 1999 as a pro-

---

insulation, solar energy systems, flooring, patios, landscaping, fences, doors and windows and waterproofing in connection with such land or building or that portion thereof which is used or designed to be used as a private residence, dwelling place or residential rental property or the removal or replacement of a residential underground heating oil storage tank system, in which the total cash price for all work agreed upon between the contractor and owner exceeds two hundred dollars." General Statutes § 20-419 (4). The Home Improvement Act expressly provides that the term "home improvement" does not include "[t]he construction of a new home . . . ." General Statutes § 20-419 (4).

[16] The Home Improvement Act requires home improvement contractors to obtain a certificate of registration from the commissioner. See General Statutes § 20-420.

posed amendment to the Home Improvement Act for the purpose of extending then existing consumer protections against unscrupulous home improvement contractors to the victims of unscrupulous new home construction contractors. See 42 H.R. Proc., Pt. 9, 1999 Sess., p. 3309, remarks of Representative Art Feltman (likening purpose of act to that of Home Improvement Act). Because one of the penalties under the Home Improvement Act is the unenforceability of a contract entered into by an unregistered contractor, an amendment to extend the applicability of the Home Improvement Act to new home construction contractors would have subjected new home construction contractors to the same penalty. Indeed, multiple speakers at a February 4, 1999 public hearing on the bill described its purpose as "bring[ing] new home contractors under the same set of regulations . . . as home improvement contractors . . . ." Conn. Joint Standing Committee Hearings, General Law, Pt. 1, 1999 Sess., p. 12, remarks of Representative Arthur J. O'Neill; see also id., p. 14, remarks of Attorney General Richard Blumenthal ("[t]he . . . bill . . . relates to extending all of the protections that we currently provide to people who are victims of home improvement contractor fraud when they are victims of the same kind of fraud . . . involving new home construction").

During the legislative session, however, the bill was revised substantially so as to create a new chapter of the General Statutes that would be applicable only to new home construction contractors and that would leave undisturbed the provisions of the preexisting Home Improvement Act. The resulting bill, which was adopted by the House and Senate with only minor technical amendments and which subsequently was codified at General Statutes §§ 20-417a through 20-417j, did not include a provision invalidating or declaring unenforceable noncompliant contracts. In fact, it did not include

any provision regarding the enforceability of non-compliant contracts. Instead, the legislature chose to adopt the comprehensive scheme of penalties previously described, which subjects violators to civil penalties, criminal liability and exposure to a private lawsuit under CUTPA.[17] We therefore conclude from this review of the language and legislative history of the act, and the contrasting penalty provisions of the Home Improvement Act, that the legislature did not intend to render noncomplying contracts unenforceable under the New Home Construction Contractors Act.

We recognize that, in certain cases, this court has deemed contracts unenforceable due to a party's non-compliance with the relevant statutory requirements, notwithstanding the presence of a statutory penalty or series of penalties. See, e.g., *Solomon* v. *Gilmore*, 248 Conn. 769, 790–91, 731 A.2d 280 (1999); *Westville & Hamden Loan Co.* v. *Pasqual*, 109 Conn. 110, 115–17, 145 A. 758 (1929) (*Westville*). But see *Sagal* v. *Fylar*, 89 Conn. 293, 297, 93 A. 1027 (1915) (statute's penalization of noncompliance by fine or imprisonment without mention of any additional penalty "has frequently been

---

[17] The act also establishes a "New Home Construction Guaranty Fund" (fund) for the purpose of compensating consumers determined by a court to have sustained "loss or damages . . . by reason of any violation of the provisions of [the act] . . . ." General Statutes § 20-417i (d). Compensation from the fund, however, is limited to $30,000 in actual damages and is available only when the judgment is against a "new home construction contractor holding a certificate or who has held a certificate under [the act] . . . within the past two years of the date of entering into the contract with the consumer . . . ." General Statutes § 20-417i (d).

The defendants seize upon the latter limitation, arguing that it would be unjust and illogical to deny recovery to consumers who have been victimized by unlicensed contractors. The defendants' argument, however, suffers from a fallacy of composition. The mere fact that the defendants have no recourse under the narrow rubric of the fund does not mean that they have no recourse under the broader rubric of the act as a whole. In fact, as we explain in this opinion, the act's penal and remedial scheme provides sufficient recourse to aggrieved consumers to effectuate the act's underlying public policy.

regarded as a significant indication of a purpose that the penalty expressed should be exclusive"). In none of these cases, however, has the scheme of penalties been nearly as comprehensive as that provided under the New Home Construction Contractors Act.

In *Solomon*, the plaintiffs, Alan M. Solomon and Mary Ellen Tomeo, issued a secondary mortgage without first obtaining a license as required by the Secondary Mortgage Act.[18] *Solomon* v. *Gilmore*, supra, 248 Conn. 771, 774. The named defendant, William C. Gilmore, opposed the plaintiffs' attempt to foreclose the mortgage, arguing that the plaintiffs' noncompliance with the Secondary Mortgage Act rendered the resulting secondary mortgage unenforceable. See id., 771–73. The Secondary Mortgage Act calls for only administrative penalties for noncompliance with its provisions, empowering the banking commissioner to seek injunctive relief, monetary penalties, or a court order mandating restitution, or, alternatively, to issue a temporary cease and desist order. General Statutes § 36a-517 (allowing banking commissioner to proceed under General Statutes §§ 36a-50 and 36a-52, latter of which authorizes banking commissioner to issue temporary cease and desist order); see *Solomon* v. *Gilmore*, supra, 780–81. Accordingly, we determined that enforcing a mortgage when the lender had failed to comply with the licensing requirement of the Secondary Mortgage Act would "thwart the remedial object of the statute . . . ." (Internal quotation marks omitted.) *Solomon* v. *Gilmore*, supra, 790.

---

[18] When the plaintiffs issued the mortgage in *Solomon*, the Secondary Mortgage Act provided in relevant part: "No person shall engage in the secondary mortgage loan business in this state as a lender or a broker unless such person has obtained a license under this chapter. For the purposes of this chapter, a person shall be deemed to be engaged in the secondary mortgage loan business if: Such person . . . makes a secondary mortgage loan . . . ." General Statutes (Rev. to 1989) § 36-224b, now codified as amended at General Statutes § 36a-511 (a).

Likewise, in *Westville*, the plaintiff, Westville and Hamden Loan Company, which was licensed as a small loan company under the Small Loans Act, loaned the defendant borrowers a sum exceeding the statutory cap on such loans. *Westville & Hamden Loan Co.* v. *Pasqual*, supra, 109 Conn. 113–14. The Small Loan Act penalized violations of its provisions by a fine of up to $500, imprisonment of up to six months, or both. Id., 116. The plaintiff claimed that these penalties were intended to be exclusive and that the promissory note was enforceable, notwithstanding its violation of the statutory cap. See id., 115. We determined, however, that "[i]f th[e] note were held to be enforceable the door would be opened wide for evasions of the legislative limitation of loans by licensees under [the Small Loans] Act"; id., 116–17; and therefore determined that the note was unenforceable. Id., 116.

By contrast, the present case does not involve a situation in which enforcing a noncompliant contract would thwart the purpose of the statute or invite violations thereof. The New Home Construction Contractors Act's existing penalties cumulatively are adequate to deter noncompliance with the act's provisions. See *Sagal* v. *Fylar*, supra, 89 Conn. 298. Moreover, as we previously described, the act exposes a person who violates its provisions to a private lawsuit under CUTPA. General Statutes § 20-417g. Whereas the imposition of civil or criminal penalties on a person who violates the act will not inure to the benefit of the aggrieved consumer, any consequent liability under CUTPA directly benefits the consumer and is correlated to the consumer's loss. See General Statutes § 42-110g (a) (permitting recovery of "actual damages," as well as punitive damages, and provision of equitable relief). The act's existing scheme of multiple, cumulative and qualitatively different penalties well serves the underlying public policy of the act to protect consumers against unscrupulous new home

construction contractors. Our conclusion that the existing statutory scheme of penalties effectuates the act's underlying public policy thus provides independent support for our conclusion that holding noncompliant contracts unenforceable under the act is unwarranted.

The defendants contend that, in interpreting the New Home Construction Contractors Act, this court should follow *Barrett Builders* v. *Miller*, 215 Conn. 316, 323, 576 A.2d 455 (1990), in which we determined that a contract was unenforceable for failure of the plaintiff contractor, Barrett Builders, to comply with the written contract requirement of the Home Improvement Act. In that case, the contract omitted certain essential details regarding materials and construction as well as a completion date for performance. Id., 318. Thereafter, the defendant consumer, Rhoda Miller, refused to pay the second and third installments on the total contract price. See id., 319. The plaintiff argued that, even if the contract was unenforceable under the Home Improvement Act it should have been permitted to bring a cause of action against the defendant under a quasi contract theory because, inter alia, the statutory scheme did not prohibit recovery under such a theory. Id., 321–22. We disagreed, reasoning that the nonenforceability provision was mandatory and that to permit recovery in the manner urged by the plaintiff "would defeat and nullify the statute." Id., 325.

We conclude that *Barrett Builders* is not controlling because it is legally inapposite to the present case. First, the contract in *Barrett Builders* was governed by the Home Improvement Act. The contract in the present case, however, is governed by the New Home Construction Contractors Act. As we already have explained, the Home Improvement Act contains a provision explicitly invalidating and declaring unenforceable noncompliant contracts whereas the New Home Construction Con-

tractors Act does not. Second, the issue in *Barrett Builders* was the availability of quasi contractual relief in lieu of the enforcement of a concededly unenforceable contract. See id., 321–23. The issue in the present case, however, is the very unenforceability of a contract. In light of these distinctions, we conclude that the conclusion and reasoning of *Barrett Builders* are inapposite to the present case.

The judgment is affirmed.

In this opinion the other justices concurred.