GERALD HEES ET AL. *v.* BURKE
CONSTRUCTION, INC.
(SC 18075)

Rogers, C. J., and Norcott, Palmer, Zarella and Schaller, Js.

Argued September 4, 2008—officially released January 6, 2009

*Scott M. Harrington*, for the appellant (defendant).

*Richard H. Raphael*, for the appellees (plaintiffs).

*Opinion*

NORCOTT, J. The principal issue in this appeal is whether a violation of the Home Improvement Act (act), General Statutes § 20-418 et seq., and specifically, Gen-

eral Statutes § 20-429 (a),[1] precludes a home improvement contractor from reducing the damages that it owes for breach of contract to a nonbreaching homeowner by an amount equal to the unpaid balance remaining on the contract. The defendant, Burke Construction, Inc., appeals from the judgment of the trial court,[2] accepting the report of the attorney trial referee, David Albert (referee), which found that the defendant had breached its contract with the plaintiff homeowners, Gerald Hees and Beatrice Hees, and recommended a damages award in the amount of $16,085.17.[3] On appeal, the defendant claims that the referee improperly calculated the plaintiffs' damages award. Specifically, the defendant claims that, although the failure of a home improvement contract to comply with § 20-429 (a) renders that contract unenforceable against a homeowner, § 20-429 (a) nevertheless does not preclude a contractor from reducing a damages award against it by the unpaid contract balance, in an action brought by the homeowner against the contractor. The defendant further claims that, when the award in this case is so reduced, the plaintiffs have not suffered any actual damages for

[1] General Statutes § 20-429 (a) provides in relevant part: "No home improvement contract shall be valid or enforceable against an owner unless it: (1) Is in writing, (2) is signed by the owner and the contractor, (3) contains the entire agreement between the owner and the contractor, (4) contains the date of the transaction, (5) contains the name and address of the contractor and the contractor's registration number, (6) contains a notice of the owner's cancellation rights in accordance with the provisions of chapter 740, (7) contains a starting date and completion date, and (8) is entered into by a registered salesman or registered contractor. . . ."

[2] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[3] In addition to accepting the referee's finding in favor of the plaintiffs on their breach of contract claim, the trial court also accepted the referee's recommendation against awarding the defendant any recovery on its three counterclaims. The defendant does not appeal from this portion of the trial court's judgment, but, rather, focuses its appeal exclusively on the referee's calculation of the plaintiffs' damages.

which they can recover. We agree with the defendant, and, accordingly, we reverse the judgment of the trial court.

The record reveals the following relevant facts and procedural history. The parties entered into a written home improvement contract on June 1, 2002, the terms of which provided that the defendant would provide various home improvement services and materials for $349,500. The original terms of the contract were changed periodically through the execution of thirty different change orders, which increased the price for the project by $42,354, to a total of $391,854. The terms of the contract required the plaintiffs to make monthly requisition payments for work already completed, the first nine of which the plaintiffs made in a timely fashion. The plaintiffs failed, however, to make the tenth requisition payment within thirty days, as required by the contract. By letter dated May 19, 2003, the defendant advised the plaintiffs that it intended to terminate the contract, in accordance with its terms, if payment was not received within one week. Thereafter, the plaintiffs did not pay the defendant, which then terminated the contract on May 29, 2003. At the time of termination, the defendant had completed and billed the plaintiffs for $346,378 worth of work,[4] in addition to $625 for which the plaintiffs were not billed. The plaintiffs, however, had only paid the defendant $330,531, which left an unpaid balance on the contract for work already performed of $16,472.[5]

The plaintiffs thereafter brought this action, alleging that the defendant had breached the contract by failing

[4] In calculating the total of $346,378 for work completed and billed, the referee included costs contained in the eleventh requisition payment, which the defendant had submitted to the plaintiffs by letter dated May 15, 2003, as well as $4650 for work completed after the submission of the eleventh requisition payment up to the date of termination.

[5] Subsequent to its termination of the contract, the defendant filed a mechanic's lien against the plaintiffs' property to secure the unpaid balance.

to complete all of the work, and by performing some of that work in a defective manner. The complaint did not contain any reference to the act, nor did it assert a claim under the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. The defendant filed three counterclaims, seeking money damages for breach of contract, quantum meruit and foreclosure of its mechanic's lien.

The court referred the case to the referee, who, after conducting a hearing, filed a report finding in favor of the plaintiffs with regard to both the breach of contract claim[6] and the defendant's three counterclaims. The referee concluded that, because the contract did not contain a right of rescission clause, it was unenforceable against the plaintiffs under § 20-429 (a) (6), and the defendant was, therefore, precluded from seeking recovery under the contract. The referee found that the plaintiffs had incurred $16,085.17 in costs to complete and repair the work, and recommended that judgment be rendered in favor of the plaintiffs in that amount. In so recommending, the referee declined the defendant's request to reduce the damages award commensurate with the unpaid balance on the contract, namely, $16,472, on the ground that such an offset was precluded by the defendant's violation of § 20-429 (a) (6).[7]

---

[6] Finding in favor of the plaintiffs on their breach of contract claim, the referee concluded that the "[p]laintiffs were ready, willing and able to pay requisition [ten] to [the] defendant conditioned, only on the completion of the customary type of discussions," and that "[t]he failure to complete the discussion in reference to requisition [ten] was caused by the failure or refusal of the defendant and not by the actions of the plaintiffs."

[7] The referee did not elaborate on his conclusion that § 20-429 (a) precluded the defendant from reducing the plaintiffs' damages, simply stating that "[b]ecause of [the] defendant's CUTPA violations [the] defendant is not entitled to any of its claim for damages nor is it entitled to offset any of its damage claims against [the] plaintiffs' damages." We note that the referee's reference to CUTPA is somewhat confusing. In his report, for example, the referee correctly recognized that a violation of the act is a per se violation of CUTPA. The referee then went on, however, to note that the plaintiffs did not assert any claim under CUTPA, and had properly based their defense of the defendant's counterclaims on the defendant's violation of the act,

The trial court accepted the referee's report and rendered judgment for the plaintiffs. This appeal followed.

On appeal, the defendant contends that the plaintiffs' damages award should have been reduced by an amount equal to the unpaid balance remaining on the contract, because, under traditional contract damages law, the appropriate measure of damages in a construction contract case is the plaintiffs' reasonable cost to complete or repair the work, less the unpaid balance on the contract. The defendant further contends that the trial court improperly accepted the referee's conclusion that a violation of § 20-429 (a) serves to alter this well established principle of contract damages law. We agree with the defendant in both respects, and conclude, therefore, that the referee improperly failed to reduce the plaintiffs' damages by the unpaid balance remaining on the contract.

We begin by determining the appropriate standard of review. "While the reports of [attorney trial referees] . . . are essentially of an advisory nature, it has not been the practice to disturb their findings when they are properly based upon evidence, in the absence of errors of law, and the parties have no right to demand that the court shall redetermine the fact[s] thus found. . . .

"A reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the

not on CUTPA. Thus, it appears that, in concluding that CUTPA precluded the defendant from recovering any damages under the contract or offsetting the plaintiffs' damages with its own, the referee improperly conflated CUTPA with the act. Although it is true that the defendant's violation of the act constituted a violation of CUTPA; see, e.g., *Woronecki* v. *Trappe*, 228 Conn. 574, 579, 637 A.2d 783 (1994); the proper legal justification for denying the defendant any recovery under the contract was its violation of § 20-429 (a), not its violation of CUTPA. See footnote 10 of this opinion.

Superior Court reviewing the findings of . . . attorney trial referees. . . . This court has articulated that attorney trial referees and factfinders share the same function . . . whose determination of the facts is reviewable in accordance with well established procedures prior to the rendition of judgment by the court. . . .

"Although it is true that when the trial court reviews the attorney trial referee's report the trial court may not retry the case and pass on the credibility of the witnesses, the trial court must review the referee's entire report to determine whether the recommendations contained in it are supported by findings of fact in the report. . . .

"Finally, we note that, because the attorney trial referee does not have the powers of a court and is simply a fact finder, [a]ny legal conclusions reached by an attorney trial referee have no conclusive effect. . . . The reviewing court is the effective arbiter of the law and the legal opinions of [an attorney trial referee], like those of the parties, though they may be helpful, carry no weight not justified by their soundness as viewed by the court that renders judgment. . . . Where legal conclusions are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts found by the . . . referee." (Citations omitted; internal quotation marks omitted.) *Alliance Partners, Inc.* v. *Oxford Health Plans, Inc.*, 263 Conn. 191, 201–202, 819 A.2d 227 (2003).

I

We begin our analysis by briefly addressing the defendant's first claim, namely, that the trial court improperly accepted the referee's report because the referee failed to use an appropriate method to calculate the plaintiffs' damages. "It is axiomatic that the sum of damages awarded as compensation in a breach of contract action

should place the injured party in the same position as he would have been in had the contract been performed. . . . The injured party, however, is entitled to retain nothing in excess of that sum which compensates him for the loss of his bargain. . . . Guarding against excessive compensation, the law of contract damages limits the injured party to damages based on his actual loss caused by the breach. . . . The concept of actual loss accounts for the possibility that the breach itself may result in a saving of some cost that the injured party would have incurred if he had had to perform. . . . In such circumstances, the amount of the cost saved will be credited in favor of the wrongdoer . . . that is, subtracted from the loss . . . caused by the breach in calculating [the injured party's] damages. . . . It is on this ground that . . . when an owner receives a defective or incomplete building, any part of the price that is as yet unpaid is deducted from the cost of completion that is awarded to him . . . . Otherwise, the owner would be placed in a better position than full performance would have put him, thereby doubly compensating him for the injury occasioned by the breach." (Citations omitted; internal quotation marks omitted.) *Argentinis* v. *Gould*, 219 Conn. 151, 157–58, 592 A.2d 378 (1991).

Thus, we agree with the defendant that the referee used an improper method to calculate the plaintiffs' damages. The parties do not dispute the fact that, at the time of the breach, there remained an unpaid balance on the contract of $16,472. They also do not dispute the fact that, as a result of the breach, the plaintiffs incurred expenses to complete and repair the work in the amount of $16,085.17. Accordingly, in the absence of some legal justification for not doing so, the referee should have subtracted any unpaid amount remaining on the contract from the extra costs incurred by the plaintiffs, so as to avoid placing the plaintiffs in a better position than they would have been in had the contract been

fully performed. See id. Had the referee done so, it becomes apparent that the plaintiffs in this case have, if anything, actually *saved* $386.83 as a result of the defendant's breach.[8] Thus, unless § 20-429 (a) requires an alteration of the traditional approach of calculating contract damages, and prevents the defendant from reducing the plaintiffs' damages by the outstanding balance on the contract, it cannot be said that the plaintiffs have incurred any actual loss for which they can recover.

## II

We turn, then, to the principal issue in this appeal, namely, whether the trial court improperly accepted the referee's legal conclusion that the defendant's violation of § 20-429 (a) precluded a reduction in the plaintiffs' damages by an amount equal to the unpaid balance on the contract. The defendant claims that there is nothing in the language of § 20-429 (a), or our cases interpreting it, that mandates an abandonment of the traditional approach to contract damages by allowing a homeowner to recover damages against a contractor when they have not, in fact, suffered any actual loss or injury. To hold otherwise, the defendant contends, would give the plaintiffs a windfall double recovery that the legislature did not intend when it passed the act. In response, the plaintiffs claim that § 20-429 (a) prohibits a contractor who has violated the act from using its own damages under the contract to offset the homeowner's damages, since the contractor's damages are,

---

[8] Indeed, it appears that the plaintiffs have, as a result of the defendant's breach and the inability of the defendant to prevail on its counterclaims; see part II of this opinion; incurred a savings of far more than $386.83. The unpaid balance remaining on the contract pertains only to the amount unpaid for work already performed. Had there been no breach at all, therefore, the plaintiffs likely would have been liable for both the $16,472 owed to the defendant for work already performed, *as well as* the amount that the defendant would have billed them for the uncompleted work, which was subsequently completed by another contractor.

standing alone, unenforceable and uncollectible. We agree with the defendant, and conclude that, in a breach of contract case brought by a homeowner against a contractor, § 20-429 (a) does not preclude a trial court from reducing the homeowner's damages by the amount left unpaid under the contract.

Whether § 20-429 (a) precludes the defendant from reducing the plaintiffs' damages in the present case "raises a question of statutory construction, which is a [question] of law, over which we exercise plenary review. . . . The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . .

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *State* v. *Marsh & McLennan Cos.*, 286 Conn. 454, 464–65, 944 A.2d 315 (2008).

We begin our statutory analysis, then, with the language of § 20-429 (a). Section 20-429 (a) provides in

relevant part: "No home improvement contract shall be valid or enforceable against an owner unless it: (1) Is in writing, (2) is signed by the owner and the contractor, (3) contains the entire agreement between the owner and the contractor, (4) contains the date of the transaction, (5) contains the name and address of the contractor and the contractor's registration number, (6) *contains a notice of the owner's cancellation rights in accordance with the provisions of chapter 740*, (7) contains a starting date and completion date, and (8) is entered into by a registered salesman or registered contractor. . . ." (Emphasis added.) We have previously concluded that this language clearly and unambiguously precludes a contractor from affirmatively seeking recovery against a homeowner on a contract that is in violation of § 20-429 (a). See, e.g., *Wright Bros. Builders, Inc.* v. *Dowling*, 247 Conn. 218, 228, 720 A.2d 235 (1998) ("[i]n construing § 20-429 [a], this court consistently has held that the requirements of that section are mandatory and that a contractor is precluded from enforcing a home improvement contract that does not satisfy its requirements"); *Caulkins* v. *Petrillo*, 200 Conn. 713, 717–18, 513 A.2d 43 (1986) ("The language of § 20-429 [a] is clear and unambiguous. . . . Read literally . . . it is clear that the plain language of the statute does not provide an exception to the requirement that home improvement contracts be in writing." [Citations omitted; internal quotation marks omitted.]). The question in the present case, however, which is a matter of first impression, is whether the legislature intended § 20-429 (a) to prohibit a contractor from in any way using the contract against the interests of the homeowner, even in the procedural context of an action brought by the homeowner *against the contractor*.[9] The

---

[9] It appears that the plaintiffs and the referee both miss this important distinction in the purpose for which the defendant attempts to use the contract. The referee, for example, found that "[b]ecause of [the] defendant's CUTPA violations [the] defendant is not entitled to any of its claim for damages nor is it entitled to offset any of its damage claims against [the]

language of the statute, however, does not indicate whether it applies exclusively to affirmative enforcement efforts by the contractor, or whether it also precludes any use of the contract against the interests of the homeowner, regardless of the procedural context. Because both readings of the statute are reasonable, we conclude that the statutory language is ambiguous in this case.

Accordingly, we now turn to an analysis of the relevant extratextual sources in order to determine the scope of § 20-429 (a). Although the legislative history of § 20-429 (a) is silent on this specific question, the history of the act, more broadly, indicates that § 20-429 (a) was intended to protect homeowners, rather than to serve as a tool for them to enhance their own interests at the expense of contractors. Representative William P. Candelori, for example, remarked that "[t]he purpose of the bill is to provide minimal, and I stress minimal, safeguards for the consumer who contracts for home improvement work to be done on or in the home." 22 H.R. Proc., Pt. 33, 1979 Sess., p. 11,613. Similarly, Senator Audrey P. Beck indicated that the purpose of the bill was not only to "provide some safeguards for consumers who contract for home improvement work," but also to benefit the majority of home improvement

plaintiffs' damages." Similarly, the plaintiffs repeatedly assert that the defendant may not offset its own damages against those of the plaintiffs. The defendant does not claim, however, that it is entitled to *recover* the unpaid balance, with the result being that the two damages awards offset or cancel each other out. On the contrary, the defendant fully admits, as evidenced by its decision not to appeal from the adverse judgment on its counterclaims, that § 20-429 (a) prohibits it from affirmatively pursuing its claim for damages against the plaintiffs, and then using any award it may obtain to offset the damages awarded to the plaintiffs. Rather, the defendant simply asserts, and we agree, that, by accepting that the defendant is legally precluded by § 20-429 (a) from affirmatively asserting its own claims against the plaintiffs, it does not necessarily follow that the defendant is thereby precluded from asserting any of its traditional defenses to reduce the damages award in an action brought against it by the plaintiffs.

contractors. 22 S. Proc., Pt. 17, 1979 Sess., p. 5796. More importantly, although the legislative history is replete with references to the act's protective nature, there is not a single instance in the legislative history of § 20-429 (a) in which the drafters even contemplated that the statute could, or should, be used by a homeowner to enhance his own damages award. Thus, we agree with the defendant that the legislative history of § 20-429 (a) does not support the plaintiffs' contention that the act was intended to supersede established principles of contract damages, and allow a homeowner affirmatively to recover damages to which he would not otherwise be entitled.

Moreover, the only cases disclosed by our research in which § 20-429 (a) has been used offensively by a homeowner arise in the context of CUTPA claims, wherein that statute provides the basis for recovery, not § 20-429 (a) itself.[10] Thus, under General Statutes

---

[10] Indeed, § 20-429 (a) cases arise almost exclusively within one of just two different contexts: (1) those in which the homeowner asserts an affirmative CUTPA claim against the contractor; see, e.g., *MJM Landscaping, Inc.* v. *Lorant*, 268 Conn. 429, 434–35, 845 A.2d 382 (2004); *Meadows* v. *Higgins*, 249 Conn. 155, 159, 733 A.2d 172 (1999); *Wright Bros. Builders, Inc.* v. *Dowling*, supra, 247 Conn. 224 n.5; *Habetz* v. *Condon*, 224 Conn. 231, 234, 618 A.2d 501 (1992); *A. Secondino & Son, Inc.* v. *LoRicco*, 215 Conn. 336, 339, 576 A.2d 464 (1990); or (2) those in which the homeowner uses it as a shield to prevent the contractor from affirmatively asserting its own claims. See, e.g., *D'Angelo Development & Construction Co.* v. *Cordovano*, 278 Conn. 237, 240–41, 897 A.2d 81 (2006); *MJM Landscaping, Inc.* v. *Lorant*, supra, 434–35; *Meadows* v. *Higgins*, supra, 159; *Wright Bros. Builders, Inc.* v. *Dowling*, supra, 220; *Rizzo Pool Co.* v. *Del Grosso*, 232 Conn. 666, 671, 657 A.2d 1087 (1995); *Wadia Enterprises, Inc.* v. *Hirschfeld*, 224 Conn. 240, 244, 618 A.2d 506 (1992); *Habetz* v. *Condon*, supra, 234; *Sidney* v. *DeVries*, 215 Conn. 350, 352–53, 575 A.2d 228 (1990); *Liljedahl Bros., Inc.* v. *Grigsby*, 215 Conn. 345, 346, 576 A.2d 149 (1990); *A. Secondino & Son, Inc.* v. *LoRicco*, supra, 339; *Barrett Builders* v. *Miller*, 215 Conn. 316, 319, 576 A.2d 455 (1990); *Caulkins* v. *Petrillo*, supra, 200 Conn. 715. The use of § 20-429 (a) claimed by the plaintiffs in the present case does not fall into either category, since the plaintiffs have not asserted a CUTPA claim, and the plaintiffs, rather than the defendant, are the party suing.

§ 20-427 (c),[11] any violation of the act is a per se violation of CUTPA. See, e.g., *Woronecki* v. *Trappe*, 228 Conn. 574, 579, 637 A.2d 783 (1994). Once a violation of the act has been established, however, our cases make clear that the homeowners still must prove that they have suffered an injury or actual loss in order to recover damages under CUTPA. See, e.g., *Rizzo Pool Co.* v. *Del Grosso*, 232 Conn. 666, 684–85, 657 A.2d 1087 (1995) (denying recovery on CUTPA claim based on § 20-429 [a] because counterclaim plaintiffs "presented no evidence that they had suffered an ascertainable loss of money or property"); *Woronecki* v. *Trappe*, supra, 581–82 (remanding case to trial court to determine damages, after concluding that CUTPA violation had occurred); *A. Secondino & Son, Inc.* v. *LoRicco*, 215 Conn. 336, 343–44, 576 A.2d 464 (1990) (denying recovery on CUTPA claim on ground that homeowner had not proven any loss or injury for which he could recover); *Scrivani* v. *Vallombroso*, 99 Conn. App. 645, 653–54, 916 A.2d 827 ("[w]e do not read our law to dispense with the [proof of damages] requirement once a violation of the . . . act is established"), cert. denied, 282 Conn. 904, 920 A.2d 309 (2007). Our research does not disclose any CUTPA case in which our courts have either dispensed with the proof of damages requirement, or held that the traditional methods of calculating such damages should be altered by virtue of the simple fact that § 20-429 (a) serves as the basis for the CUTPA violation. Thus, if § 20-429 (a) does not affect the damages calculation in actions brought under CUTPA, we do not see

[11] General Statutes § 20-427 (c) provides in relevant part: "A violation of any of the provisions of this chapter shall be deemed an unfair or deceptive trade practice under subsection (a) of section 42-110b."

General Statutes § 42-110b (a) provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

why it should alter such a calculation in an action for breach of contract.[12]

Furthermore, were we to agree with the plaintiffs' position in this case, we would, in effect, award them an unwarranted windfall that the legislature could not have intended. The plaintiffs essentially claim that, not only does § 20-429 (a) relieve them of their obligation to pay the defendant for work already completed, but it also serves to punish the defendant by obligating it to reimburse the plaintiffs for any costs incurred to complete the contract, regardless of whether such costs are over and above the original contract price. Thus, according to the plaintiffs, if a contractor discovers that the contract violates § 20-429 (a) the day after it is entered into, and then immediately terminates the contract rather than risk doing work on a contract that it

---

[12] Although it is not controlling, *Argentinis* v. *Gould*, supra, 219 Conn. 151, relied on by the defendant, is also instructive. In *Argentinis*, the plaintiff homeowner brought an action against the defendant contractor for breach of contract, on the ground that the defendant had not substantially performed the contract. Id., 154. The defendant thereafter filed a separate action to foreclose its mortgage on the plaintiff's property. Id. The attorney trial referee found in favor of the plaintiff in both actions, determining that the defendant was legally precluded from recovering in its foreclosure action because of its failure substantially to perform the contract, and that the plaintiff's own damages should not be reduced by the amount of the outstanding mortgage. Id., 154–55. On appeal, we concluded that the defendant's legal inability affirmatively to recover on its own claim did not, without more, alter the basic principle that a plaintiff in a breach of contract case may not recover damages in excess of the sum necessary to compensate him for his actual loss. Id., 157–59. Because the plaintiff in *Argentinis* would have had to bear the cost of the mortgage had there been no breach, we concluded that the referee improperly failed to reduce the damages award accordingly. Id., 158–59. Thus, although the legal basis for not reducing the damages award in *Argentinis* was the defendant's lack of substantial performance, and not § 20-429 (a), our holding in *Argentinis* supports our conclusion that the plaintiffs in the present case must do more than simply demonstrate the defendant's legal inability to enforce the contract. Rather, they must show that § 20-429 (a) was intended to alter traditional principles of contract damages, by allowing the plaintiffs to recover an amount in excess of their actual loss.

cannot enforce,[13] § 20-429 (a) allows the homeowner to hire another contractor to do the same work, for the same price, and then sue the original contractor to reimburse it for the entire cost of construction. Under the plaintiffs' theory, therefore, § 20-429 (a) could be read to allow a homeowner affirmatively to obtain a free home improvement project from the contractor, rather than simply to prevent the contractor from enforcing otherwise valid claims against the homeowner. Indeed, the plaintiffs contended at oral argument before this court that, although such a result may be harsh, the act was intended to provide such a windfall to homeowners. Although § 20-429 (a) may result in a windfall to the homeowner in certain prescribed circumstances, such as its preclusion of affirmative enforcement by the contractor of otherwise valid claims under the contract, we do not believe that the legislature intended for § 20-429 (a) to provide the type or magnitude of windfall claimed by the plaintiffs herein.[14]

[13] The plaintiffs claim that the defendant's reading of § 20-429 (a) will eliminate any incentive on the part of contractors ever to continue doing work on a contract once it is discovered that the contract violates § 20-429 (a), because a contractor will not risk doing more work on a contract that it cannot enforce. According to the plaintiffs, this will result in added costs and delays to homeowners that were unintended by the act. The plaintiffs' argument is without merit, however, because the contractor remains liable for any damages that may result from the breach under traditional principles of contract damages.

[14] Indeed, the legislature's enactment of § 20-429 (f), which provides that "[n]othing in this section shall preclude a contractor who has complied with subdivisions (1), (2), (6), (7) and (8) of subsection (a) of this section from the recovery of payment for work performed based on the reasonable value of services which were requested by the owner, provided the court determines that it would be inequitable to deny such recovery," indicates that, although it was intended to protect homeowners, § 20-429 (a) was not even intended to result in inequitable windfalls in all cases brought by the contractor, let alone those cases brought by the homeowner. See *Economos* v. *Liljedahl Bros., Inc.*, 279 Conn. 300, 310–11, 901 A.2d 1198 (2006); *New England Custom Concrete, LLC* v. *Carbone*, 102 Conn. App. 652, 659, 927 A.2d 323 (2007); see also 36 S. Proc., Pt. 10, 1993 Sess., p. 3451, remarks of Senator Thomas F. Upson ("As you know, there was a Supreme Court decision [*Barrett Builders* v. *Miller*, 215 Conn. 316, 576 A.2d 455 (1990)]

We conclude that, in an action brought by a homeowner against a home improvement contractor for breach of contract, § 20-429 (a) does not preclude the damages award from being reduced by an amount equal to the unpaid balance remaining on the contract. Accordingly, the trial court's acceptance of the referee's report, which failed to reduce the damages award by that amount, was improper. Because application of this conclusion means that the plaintiffs' damages are completely offset by the amount they owed the defendant under the contract, judgment should have been rendered in favor of the defendant.

The judgment is reversed and the case is remanded with direction to render judgment in favor of the defendant.

In this opinion ROGERS, C. J., and PALMER and ZARELLA, Js., concurred.

SCHALLER, J., concurring. I agree that the plaintiff homeowners, Gerald Hees and Beatrice Hees, are not entitled to recover damages for their costs to complete and repair the work performed by the defendant, Burke Construction, Inc. I disagree, however, with the decision to reverse the judgment on the basis of an interpretation of the Home Improvement Act (act), General Statutes § 20-418 et seq. I would reach the same result by a more direct route that does not involve any statutory interpretation of General Statutes § 20-429 (a), which provides in relevant part that "[n]o home improvement

that said if it wasn't in writing and value had been put in . . . the contractor could not get any money back at all. So this at least attempts to alleviate partially that situation."); 36 H.R. Proc., Pt. 16, 1993 Sess., p. 5611, remarks of Representative John Wayne Fox (Discussing *Barrett Builders* and stating that it is "somewhat unfair to require that each 'i' be dotted and 't' be crossed . . . . [I]n terms of balancing the interest of the consumers, whom we very much want to protect and at the same time the contracts, whom we want to be fair, it is our opinion that this is a step in the right direction.").

contract shall be valid or enforceable against an owner unless it . . . (6) contains a notice of the owner's cancellation rights . . . ." My approach avoids determining whether the use of the statute is "affirmative" or not, a concept that is not found in the statute. I believe that the act, the language of which is unambiguous, is compatible with the law of contract damages and that, in light of the procedural history of this case, it is appropriate to use the contract price as a reference point to calculate the plaintiffs' damages irrespective of the act's application to certain aspects of this case.

Central to my approach is a precise recognition of the parties' claims and the application of § 20-429 (a) by the attorney trial referee, David Albert (referee). As the majority opinion indicates, the plaintiffs brought a breach of contract action, thereby treating the contract as valid and enforceable against the defendant. In recommending judgment for the plaintiffs on their breach of contract claim, the referee, whose report was accepted by the trial court, recognized the viability of the contract for this purpose, and repeatedly cited the contract in his various findings. In short, the contract was valid and enforceable with respect to the plaintiffs' breach of contract claim.

The defendant, in addition to contesting the plaintiffs' breach of contract claim, also filed various counterclaims. In response, the plaintiffs filed a motion for summary judgment, claiming that § 20-429 (a) barred the defendant's counterclaims. The referee agreed that § 20-429 (a) barred the counterclaims and recommended summary judgment in favor of the plaintiffs.

The plaintiffs, in other words, simultaneously claimed that the contract was enforceable to support their breach of contract claim but unenforceable, pursuant to § 20-429 (a), with respect to the contractor's counterclaims. This is a valid *dual* argument. See *New England*

*Custom Concrete, LLC* v. *Carbone,* 102 Conn. App. 652, 666, 927 A.2d 333 (2007) (trial court improperly held that homeowner cannot claim both breach of contract and, at same time, invalid contract by way of defense).

The problem in this case arose when, in calculating the plaintiffs' damages, the referee conflated the application of § 20-429 (a) to the defendant's counterclaims with the application of § 20-429 (a) to the plaintiffs' burden of proof as to damages on the breach of contract claim. In short, the referee took the concept that the contractor could not prevail on his counterclaims and applied it to the calculation of the plaintiffs' damages. The referee stated: "Because of [the] defendant's . . . [statutory] violations[1] the defendant is not entitled to any of its claim for damages *nor is it entitled to offset any of its damage claims against* [the] *plaintiffs' damages.*" (Emphasis added.)

I agree with the majority that "§ 20-429 (a) does not preclude the damages award from being reduced by an amount equal to the unpaid balance remaining on the contract." I reach that conclusion, however, on the ground that § 20-429 is inapplicable to the present case, rather than by relying on an analysis of the statute's legislative history.

Simply put, the road to calculating the plaintiffs' damages never detours with a stop at § 20-429 (a). In the present case, calculating the plaintiffs' damages necessarily requires reference to the applicable contract. With respect to proving damages, our case law requires reference to the contract on which the breach is based. "For a breach of a construction contract involving

---

[1] The referee stated "CUTPA violations"; see Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.; but it is clear that the referee was referring to § 20-429 (a) and not to CUTPA violations, because, as the majority opinion notes, the plaintiffs did not raise any CUTPA claims. See footnote 7 of the majority opinion.

defective or unfinished construction, damages are measured by computing either (i) *the reasonable cost of construction and completion in accordance with the contract* . . . or (ii) the difference between the value that the product contracted for would have had and the value of the performance that has been received by the plaintiff, if construction and completion in accordance with the contract would involve unreasonable economic waste."[2] (Emphasis added; internal quotation marks omitted.) *Levesque* v. *D & M Builders, Inc.*, 170 Conn. 177, 181, 365 A.2d 1216 (1976), quoting 1 Restatement, Contracts § 346 (1) (a), p. 573 (1932).

Under the facts of the present case, the appropriate calculation of compensatory damages, with reference to the contract, would be as follows: The contract price of \$349,500, after various change orders, totaled \$391,854. The defendant charged the plaintiffs \$347,003[3] for work that it had performed, and the plaintiffs paid the defendant \$330,531 of that amount, leaving an unpaid balance of \$16,472. The reasonable cost of completion was \$16,085.17. Accordingly, because the \$16,085.17 for the reasonable cost of completion and the payments of \$330,531 were less than the contract price; see footnote 8 of the majority opinion; the plaintiffs were not entitled to damages. See *Levesque* v. *D & M Builders, Inc.*, supra, 170 Conn. 180–81 ("[a]s a general rule, in awarding damages upon a breach of contract, the prevailing party is entitled to compensation which will place him in the same position he would have been in had the contract been properly performed").

In short, this case presents nothing more than an ordinary breach of contract claim that requires the

[2] The referee did not make any findings with respect to the value of the home in its unfinished and finished state. Accordingly, the proper calculation of damages consists of the reasonable cost of completion in accordance with the contract.

[3] The \$347,003 owed by the plaintiffs consisted of \$346,378 that had been billed by the defendant and \$625 that had not been billed.

plaintiffs to prove damages.[4] Section 20-429 (a) was relevant solely as a defense to bar the contractor's counterclaims—a wholly uncontroversial use of the statute. It is not necessary to *interpret* § 20-429 (a) with respect to the plaintiffs' breach of contract claim.

The majority opinion, at the outset, seems to agree with the proposition that § 20-429 (a) does not apply in calculating the plaintiffs' damages. In analyzing various cases that were based on violations of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., the majority concludes that "if § 20-429 (a) does not affect the damages calculation in actions brought under CUTPA, we do not see why it should alter such a calculation in an action for breach of contract."

Significantly, in order to reach the conclusion that § 20-429 (a) does not affect the damages calculation in an action brought under CUTPA, the majority does not rely on *any* statutory interpretation. Under CUTPA, a plaintiff must first "establish that the conduct at issue constitutes an unfair or deceptive trade practice. Second, [a plaintiff] *must present evidence* providing a basis for a court to make a reasonable estimate of the damages that they have suffered. . . . There is no automatic entitlement to damages." (Citation omitted; emphasis added.) *New England Custom Concrete, LLC* v. *Carbone*, supra, 102 Conn. App. 666. By analogy, the evidence in the present case, if raised under CUTPA, would be the contract price and related payments, paid

---

[4] To illustrate this point, it is clear that if the defendant had never raised any of his counterclaims, and thus had never given the plaintiffs cause to invoke § 20-429 (a), the calculation of damages on the plaintiffs' breach of contract claim would have proceeded in the same fashion as I have outlined today. That is, if the defendant had been silent during the trial and had left the plaintiffs to their proof, the plaintiffs still would not have been entitled to damages under our case law. In that posture, it could not reasonably be said that the contract was being used "against" the plaintiffs because the plaintiffs would need to rely on the contract to attempt to prove their damages.

and unpaid. See *MacMillan* v. *Higgins*, 76 Conn. App. 261, 276–79, 822 A.2d 246 (damages calculated with reference to contract price, payments made, and costs of completion in CUTPA action based on violation of § 20-429 [a]), cert. denied, 264 Conn. 907, 826 A.2d 177 (2003).

Moreover, § 20-429 (a) would be relevant to calculating damages only if our case law took account of a defendant's legal entitlement to collect an unpaid balance. As the majority observes, however, a court, in calculating a *plaintiff's* damages, need not consider whether a *defendant* legally would be entitled to recover an unpaid balance in a cause of action brought by the defendant.[5] See footnote 12 of the majority opinion.

The majority's analysis with respect to the CUTPA cases, and the insignificance of a defendant's legal authority to collect an unpaid sum, makes the majority's foray into statutory interpretation all the more unnecessary. In my view, the majority's analysis goes astray when it asks whether "the legislature intended § 20-429 (a) to prohibit a contractor from in any way using the contract against the interests of the homeowner, even in the procedural context of an action brought by the homeowner against the contractor." It is no wonder, given the potential breadth of that query, that the majority concludes that the statute is ambiguous.

The question actually presented by the facts of this case is far narrower. The more appropriate question to be asked is whether § 20-429 (a) abrogates the usual method of calculating damages when a homeowner has brought a successful breach of contract claim. I conclude that it does not. The effect of § 20-429 (a) is

---

[5] The plaintiffs have not cited any authority that suggests that a court should take into account a defendant's legal ability to collect an unpaid balance when the court calculates a plaintiff's damages.

to render a contract *invalid* and *unenforceable*. The plaintiffs, however, prevailed on their breach of contract claim, a claim based on a *valid* and *enforceable* contract.[6] The plaintiffs' damages, which must be calculated in reference to that contract, are necessarily based on a valid and enforceable contract. Simply put, the provisions of § 20-429 (a), and the act in general, do not serve as both a basis for liability or defense to a counterclaim, *and* also as a method of calculating damages. See *Scrivani* v. *Vallombroso*, 99 Conn. App. 645, 654, 916 A.2d 827 ("[t]o recover damages under CUTPA . . . the defendant must prove more than a violation of the statute" [internal quotation marks omitted]), cert. denied, 282 Conn. 904, 920 A.2d 309, aff'd after remand, 102 Conn. App. 668, 927 A.2d 920 (2007).[7]

Accordingly, because I conclude that the referee properly considered the contract to be valid for purposes of the plaintiffs' complaint, I see no obstacle to relying on the contract to assess damages, as the case law requires. Doing so does not run afoul of the act in any respect. This approach would avoid interpreting the act in a way that, to my mind, relies on concepts, such as *affirmative* uses of the statute as opposed, presumably, to *nonaffirmative* uses of the statute, that do not appear in the statute and are likely to prove troublesome in the future. It is also unnecessary to

---

[6] Again, it is a fine line to walk, but the contract was invalid and unenforceable with respect to the defendant's counterclaims only; it was valid and enforceable with respect to the plaintiffs' breach of contract claim. As noted previously in this concurring opinion, this is a permissible dual view of the contract. *New England Custom Concrete, LLC* v. *Carbone*, supra, 102 Conn. App. 666.

[7] Although we consider the failure to comply with the act, which includes § 20-429 (a), to be a per se violation of CUTPA; *Woronecki* v. *Trappe*, 228 Conn. 574, 579, 637 A.2d 783 (1994); we still require a plaintiff to prove damages. *A. Secondino & Son, Inc.* v. *LoRicco*, 215 Conn. 336, 343–44, 576 A.2d 464 (1990). Nothing within those cases suggests that the act should also be considered in calculating a plaintiff's damages.

engage in any discussion of whether the plaintiffs would benefit from a windfall.

For the foregoing reasons, I respectfully concur in the judgment reached by the majority.