## KENNETH P. MEAGHER ET AL. *v.*
## DONNA DIACRI ET AL.
## (AC 30651)
## (AC 31155)

Beach, Robinson and Pellegrino, Js.

Argued April 12—officially released September 14, 2010

 

*Norman J. Voog*, with whom was *Christopher J. Molyneaux*, for the appellants (named defendant et al.).

*Kenneth P. Meagher*, for the appellees (plaintiffs).

*Opinion*

PELLEGRINO, J. These are consolidated appeals arising out of the alleged breach of a home improvement contract. The plaintiffs, Kenneth P. Meagher and Bethilda Meagher,[1] filed a six count complaint alleging breach of contract and a violation of the Connecticut Unfair Trade Practices Act (CUTPA)[2] against the defendant Chrisdon Builders (counts one and two), breach of contract and a violation of CUTPA against the defendants Donna Diacri and Christopher Diacri (counts three and four), a violation of CUTPA against Diacri Builders, Inc. (count five), and requesting the discharge of a mechanic's lien that Chrisdon Builders had filed against the plaintiffs' property (count six). In response, the defendants filed a counterclaim[3] in which they alleged that the plaintiffs had breached the home improvement contract by failing to pay for extra work and materials. After a twelve day trial, the court, *Shaban, J.*, on December 8, 2008, rendered judgment in favor of the plaintiffs as to counts one, two, three, four and six of the complaint, and rendered judgment in favor of Diacri Builders, Inc., as to count five. On appeal,

---

[1] On appeal, Kenneth Meagher, an attorney, is representing himself and his wife, Bethilda Meagher.

[2] See General Statutes § 42-110a et seq.

[3] Although the counterclaim appears to have been filed solely in the name of Chrisdon Builders, we note that the court found "that Chrisdon Builders is not a legal entity separate and apart from either Donna Diacri or Christopher Diacri, but rather is a business name used by them in the conduct of their business." For purposes of this opinion, all references to the defendants are to Chrisdon Builders, Donna Diacri and Christopher Diacri.

in AC 30651 and AC 31155, the defendants claim that the court improperly (1) awarded CUTPA damages to the plaintiffs for the defendants' alleged failure to comply with the Home Improvement Act (the act),[4] and (2) denied the defendants' motion to open the judgment and failed to determine the amount due the defendants' under their counterclaim. We affirm the judgment of the trial court.

The following facts as found by the court, and procedural history as revealed by the record, are relevant to our resolution of the issues on appeal. On October 12, 2004, the plaintiffs entered into a written contract with Chrisdon Builders for renovations and improvements to their home at 261 Wilton Road West in Ridgefield. The parties agreed to a price of $550,000 for the work, which included construction of a new garage with a living area above it and extensive renovations to the existing home, which was built in the 1800s. The contract included a start date of November 15, 2004, and a "time is of the essence" completion date of July 15, 2005. Plans and specifications, as well as payment schedules, were appended and incorporated into the contract by reference. On October 12, 2004, the contract was signed and executed by both plaintiffs and Donna Diacri, on behalf of Chrisdon Builders.[5]

On the second page of the contract, there was a line for the entry of the contractor's state license number. The telephone number of Diacri Builders, Inc., rather than a contractor's registration number, was entered on that line.[6] In soliciting the job from the plaintiffs,

[4] See General Statutes § 20-418 et seq.

[5] The contract did not contain a notice of a right to cancel provision, which is required pursuant to General Statutes § 20-429 (a) (6).

[6] On May 30, 2006, the legislature amended General Statutes § 20-429 (a) (5) to require home improvement contractors to include a contractor's registration number in any home improvement contract. The execution of the contract in this case preceded that amendment and is not subject to that statutory requirement.

either Christopher Diacri or Donna Diacri gave the plaintiffs a business card that contained the name Chrisdon Builders but did not include a contractor's registration number. Also, a "Chrisdon Builders" sign was placed on the plaintiffs' property during construction, but it did not disclose a contractor's registration number.

Following execution of the contract, applications were made with the town of Ridgefield for an alteration permit, development application and zoning permit. The alteration permit was issued on November 30, 2004, and listed the contractor as "Diacri/Chrisdon Builders, I." The development application was issued on the same date and listed the contractor as "Diacri/Chrisdon Builders." The application had been signed by Donna Diacri on November 2, 2004, and referenced "CT license # 550053," which was the home improvement contractor license number of Diacri Builders, Inc. The zoning permit application was issued by the town on November 15, 2004. In order to commence work on the project, Donna Diacri also submitted an insurance affidavit to the town, indicating that Chrisdon Builders was the entity submitting the information.

Work began on the property on November 30, 2004, and continued through the summer of 2005. By July 15, 2005, the addition to the property had been substantially completed. The garage itself was completed on July 19, 2005. As of that time, work on the existing house was nowhere near finished. In order to allow construction on the house to progress, the plaintiffs and their daughters gradually moved into the extra room above the garage, which they used as their living quarters for the summer.

Following the July 15, 2005 deadline, a significant amount of interior and exterior work remained to be done. At trial, the plaintiffs introduced photographs

detailing the extent of the demolition and construction work that had been started but remained to be completed. As of August, 2005, the kitchen, bathroom, parlor, master bedroom, basement and other areas were uninhabitable. The demolition had left a first floor area open and exposed to the basement, which was dangerous, and prevented the plaintiffs' family from using that area of the first floor. In September, the wood flooring in the kitchen was installed, but treatment of the wood was never completed. The flooring in the master bedroom had not been completed. Some of the roofing, plumbing and exterior painting had yet to be completed. As the court noted in its memorandum of decision, "[d]espite the delay in completion, the plaintiffs continued to work with the defendants toward the common goal of completing the project. At this point in time, the plaintiffs still considered their relationship with the defendants to be a reasonable one."

With the input and consent of the plaintiffs, work continued through November, 2005. Nonetheless, substantial amounts of work still had not been completed. Insulation to the old part of the house was not approved by the town's inspector until November 30, 2005, an exterior electrical conduit was not laid until approximately November 18, 2005, and the electric meter was not installed until December 2, 2005, which prevented the power company from turning power on to parts of the house. Moreover, a gas line was not hooked up until approximately December 29, 2005, after twice having failed inspection. As of that date, some of the plumbing was not completed or did not function correctly, several lolly columns in the basement were not as they should have been, loose wires were hanging in several places, and there were no stairs down to the basement. While there were some beams supporting the house, they were not building code compliant.

As of late December, 2005, the house was not close to being in a condition such that a certificate of occupancy could be issued. By that time, the defendants had begun to slow or even stop some of the work on the property, as they had begun work on another job in November. The defendants' progress became sporadic and unpredictable. In an attempt to keep things moving, the plaintiffs began to pay some of the subcontractors directly. After a meeting between the parties in late 2005, the defendants attempted to return to continue work on the property but appeared only intermittently in January and February, 2006.

In its memorandum of decision, the court detailed the state of the project in March, 2006, nearly one and one-half years after the work had first commenced. "[T]here remained a significant amount of work to be done. In the kitchen, the cabinetry was never installed by the defendants, despite the fact that it was on site in the fall of 2005. Although the defendants denied being obligated to install them, the court finds that the contract did obligate the defendants to do so. As noted . . . the kitchen flooring was done but not fully completed. After installation, the flooring began to 'cup,' likely due to moisture. As to the [heating, ventilating and air conditioning] work, some of the piping was in as of December, 2005, but the thermostats were not in and the cooling units had been left in the living room. Other cooling and heating hardware was left in the attic. The plaintiffs, ultimately, had to undertake the effort to complete their installment. Some flooring in the bonus room in the new construction over the garage was left, as well as the flooring in the master bedroom. To one degree or another, Sheetrocking, interior and exterior painting, plumbing, electrical, demolition, stairs, interior trim, doors, siding, heating and cooling elements and equipment, all remained to be done in various areas.

"Some of the existing rooms suffered water damage during the remodeling as tarps covering exposed areas had come undone. Windows in the dining room had been put in place but large gaps made them unusable. Ultimately, they had to be reinstalled by another contractor. Tile also remained to be done where required in the old part of the house. This was so, even though the plaintiffs were ready to order the tile because the defendants never gave them the directive to do so. Eventually, the plaintiffs ordered the tile and installed it themselves. The defendants claim that the delay in the installation of the tile was the failure of the plaintiffs to timely select and order the materials. While the court finds that there was some delay on the part of the plaintiffs in this regard, the greater responsibility for the failure to complete this obligation lay with the defendants. The plaintiffs also completed significant amounts of the painting that remained. Debris was left behind both inside and outside the house, including several old heavy metal radiators that had been taken out of the house and left on the grounds. In the laundry room, there was no dryer vent to the outside. The downstairs bathroom was not substantially complete; toilets were on the site but not hooked up. The staircase to the bedrooms was not even delivered or installed until January, 2006, and the one for the basement was never completed. The exterior siding was never finished. Roof scaffolding was left on the roof. The main sewer line was never installed, nor was the sewer stack."

Although the contract specifically stated that time was of the essence as to the July 15, 2005 completion date, the plaintiffs allowed the defendants to continue to work toward completing the project. While the plaintiffs deviated from the contracted payment schedule, they continued to pay the defendants and worked with the defendants on other alterations to the project plans in an attempt to finalize the project. The defendants

continued work on the property until February, 2006. On May 3, 2006, the defendants sent a letter to the town of Ridgefield, notifying the town that the defendants were no longer acting as contractors on the project. It is undisputed that to this date, the plaintiffs had paid to the defendants a total of $465,000 for the work done on their property.[7] Thereafter, through counsel, the defendants notified the plaintiffs that they were still owed $90,000 pursuant to the contract, as well as $58,061 with regard to extras. Ultimately, on May 4, 2006, the defendants filed a mechanic's lien against the plaintiffs' property, under the name Chrisdon Builders, in the amount of $83,315.55.

On June 13, 2006, the plaintiffs filed their six count complaint against the defendants. After a twelve day trial, the court awarded damages in favor of the plaintiffs in the amount of $35,983.50 for breach of contract, $25,000 for violations of CUTPA and $760 for sanctions against the defendants for failure to comply with pretrial discovery orders. Thereafter, the defendants filed their appeals challenging the court's (1) award of CUTPA damages (AC 30651) and (2) denial of their motion to open the judgment (AC 31155). Additional facts and procedural history will be provided as necessary.

I

On appeal, the defendants first claim that the court improperly awarded $25,000 to the plaintiffs for the

---

[7] The plaintiffs paid $465,000 to the defendants in the following manner: $5000 on October 27, 2004; $50,000 on January 6, 2005; $50,000 on February 23, 2005; $50,000 on April 5, 2005; $50,000 on April 15, 2005; $50,000 on June 10, 2005; $5000 on July 19, 2005; $40,000 on August 8, 2005; $25,000 on August 26, 2005; $15,000 on September 28, 2005; $30,000 on November 18, 2005; $10,000 on November 30, 2005; $15,000 on December 12, 2005; $15,000 on December 14, 2005; $10,000 on January 3, 2006; $5000 on January 6, 2006; and $40,000 on January 18, 2006. As the court observed in its memorandum of decision, "[a]ll the payments were made to 'Chrisdon Builders' or 'Chrisdon.' "

defendants' CUTPA violations because there is no evidence that the plaintiffs suffered an ascertainable loss. We decline to review this claim.

"It is the appellant's responsibility to provide an adequate record for review. Practice Book § 60-5. The appellant shall determine whether the entire trial court record is complete, correct and otherwise perfected for presentation on appeal. . . . Practice Book § 61-10. Conclusions of the trial court cannot be reviewed where the appellant fails to establish through an adequate record that the trial court incorrectly applied the law or could not reasonably have concluded as it did. . . . An appellant's utilization of the motion for articulation serves to dispel any . . . ambiguity by clarifying the factual and legal basis upon which the trial court rendered its decision, thereby sharpening the issues on appeal. . . .

"Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court, either on its own or in response to a proper motion for articulation, any decision made by us respecting this claim would be entirely speculative." (Internal quotation marks omitted.) *Gilbert* v. *Gilbert*, 73 Conn. App. 473, 476–77, 808 A.2d 688 (2002).

Here, the defendants did not request, pursuant to Practice Book § 66-5,[8] an articulation of the court's decision to award $25,000 to the plaintiffs for the defendants' violations of CUTPA. In its thorough

[8] Practice Book § 66-5 provides in relevant part: "A motion seeking . . . an articulation . . . of the decision of the trial court shall be called . . . a motion for articulation . . . . Any motion filed pursuant to this section shall state with particularity the relief sought. . . . The trial court may make such corrections or additions as are necessary for the proper presentation of the issues raised or for the proper presentation of questions reserved. The trial judge shall file the decision on the motion with the appellate clerk. . . . The sole remedy of any party desiring the court having appellate juris-

memorandum of decision, the court awarded "$25,000, collectively, as there was an ascertainable loss which was proximately caused by the defendants' multiple violations of the [act] constituting per se violations of CUTPA." See *New England Custom Concrete, LLC* v. *Carbone*, 102 Conn. App. 652, 666, 927 A.2d 333 (2007) ("[p]ursuant to General Statutes § 20-427 (c), a violation of the [act] is automatically a violation of CUTPA"). The court found that the plaintiffs "suffered an ascertainable loss as a result of [Chrisdon Builders'] failure to substantially complete the project and to document changes to the contract in writing" and that pursuant to General Statutes § 20-429 (a) of the act, Chrisdon Builders failed to uphold its obligation to provide a contract that contained the entire agreement of the parties. That failure contributed to the breakdown of the relationship between the parties, resulting in damages to the plaintiffs, because of the inability of the parties to determine the scope of the work and amounts due. The defendants failed to file a motion for articulation and, therefore, we have no record that would permit us to review the breakdown of the award of $25,000. If the defendants had wanted the court to specify the work that was not extra work but should have been included under the contract, and the work that the defendants did not provide but that they were obligated to perform, with a dollar amount attributed to each, then the defendants should have sought an articulation. Because the defendants have failed to establish through an adequate record that the court incorrectly applied the law or could not reasonably have concluded as it did, we decline to review this claim.

## II

The defendants also claim that the court improperly denied their motion to open the judgment and failed to

diction to review the trial court's decision on the motion filed pursuant to this section . . . shall be by motion for review under Section 66-7. . . ."

determine the amount due them under their counter-claim. We disagree.

In its memorandum of decision, the court wrote that "[r]egardless of the status of the construction, the defendants cannot prevail on their breach of contract counterclaim, as they are precluded from enforcing a home improvement contract due to its deficiencies under the [act]. Specifically, the contract failed to contain a notice of cancellation rights, pursuant to § 20-429 (a) (6), and it was not entered into by a registered salesman or registered contractor as required by § 20-429 (a) (8). *MJM Landscaping, Inc.* v. *Lorant,* 268 Conn. 429, 435, 845 A.2d 382 (2004); see also General Statutes § 20-429 (f). Also, none of the changes in the terms and conditions of the contract were put in writing. *Sidney* v. *DeVries,* 215 Conn. 350, 354, 575 A.2d 228 (1990)."

Following the judgment, the defendants appealed to this court on December 29, 2008 (AC 30651). On March 20, 2009, the defendants filed with the trial court a motion to open and to set aside the judgment, pursuant to Practice Book § 17-4 and General Statutes § 52-212a. The defendants argued that on January 6, 2009, approximately thirty days after the court issued its memorandum of decision, our Supreme Court released its decision in *Hees* v. *Burke Construction, Inc.,* 290 Conn. 1, 961 A.2d 373 (2009), which permitted a contractor who failed to comply with the provisions of the act to set off moneys claimed to be due for work performed against the homeowners' claim for damages. According to the defendants, the judgment in this case should be set aside because *Hees* rendered the court's decision inconsistent with applicable law. The plaintiffs objected, arguing that *Hees* could not have been relied on because it was not the law when the case was decided and, even if it were to be considered, that case is factually distinguishable from the present case. On May 14, 2009, the court denied the defendants' motion

by memorandum of decision. On appeal, the defendants claim that the court improperly denied their motion to open because the Supreme Court's decision in *Hees* rendered the court's judgment incorrect as a matter of law.

We begin our analysis by setting forth the standard of review. "Because opening a judgment is a matter of discretion . . . [t]he exercise of equitable authority is vested in the discretion of the trial court and is subject only to limited review on appeal. . . . We do not undertake a plenary review of the merits of a decision of the trial court to grant or to deny a motion to open a judgment. The only issue on appeal is whether the trial court has acted unreasonably and in clear abuse of its discretion. . . . In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action. . . . The theory underlying these rules governing the vacating of judgments is the equitable principle that once a judgment is rendered it is to be considered final . . . and should be left undisturbed by post-trial motions except for a good and compelling reason." (Citation omitted; internal quotation marks omitted.) *Priest* v. *Edmonds*, 295 Conn. 132, 138, 989 A.2d 588 (2010).

The defendants assert that *Hees* provides guidance for this court to "correct the mistake of law which the trial court made when it rendered its decision approximately one month prior . . . ." The defendants have failed to present to this court any authority to support their position that the trial court acted unreasonably by deciding not to open its judgment and consider the decision in *Hees*. The defendants suggest that the court's rejection of their counterclaim was an "error" or "mistake of law." Nonetheless, as the court reasoned, the defendants' reliance on *Hees* is misplaced. That decision was released subsequent to the court's decision in this case and, therefore, as the court stated in

its memorandum of decision, it could not have been a case that was "overlooked either as authority relevant to its consideration of the facts or as a controlling principle of law at that time."[9] As a result, we conclude that the court did not abuse its discretion by declining to open or to set aside the judgment.[10]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[9] Because we have not been provided with an adequate analysis; see, e.g., *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control*, 266 Conn. 108, 120, 830 A.2d 1121 (2003); we do not reach the issue of whether the principles enunciated in *Hees* v. *Burke Construction, Inc.*, supra, 290 Conn. 1, are appropriately applied retroactively and whether, if so, the procedural posture of this case permits retroactive application.

[10] The defendants also claim that the court failed to determine the amount due them under their counterclaim. Although the defendants provided an extensive list of alleged unpaid extra work and materials, the court specifically stated that the defendants "gave inconsistent and often contradictory testimony as to the amount claimed to be due." "The court, as the sole arbiter of credibility, is free to accept or reject, in whole or in part, the testimony offered by either party." (Internal quotation marks omitted.) *Taylor* v. *King*, 121 Conn. App. 105, 128, 994 A.2d 330 (2010). We conclude that the court found, based on the law and applicable facts, that the defendants failed to prove that they were entitled to any specific damages.